168 P.3d 562

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Miti MAUGAOTEGA, Jr., Defendant–Appellant.**

**No. 26657.**

Supreme Court of Hawai'i.

Oct. 1, 2007.

---

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee.

State of Hawai'i Karen T. Nakasone, Deputy Public Defender, on the briefs, for the defendant-appellant Miti Maugaotega, Jr.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ., and ACOBA, J., concurring and dissenting separately with whom DUFFY, J., joins.

Opinion of the Court by LEVINSON, J.

On February 20, 2007, on petition for a writ of certiorari, the United States Supreme Court vacated the judgment of this court in *State v. Maugaotega*, 107 Hawai'i 399, 114 P.3d 905 (2005) (*Maugaotega I* ), in which this court affirmed the defendant-appellant Miti Maugaotega, Jr.'s extended terms of imprisonment, and ordered that we reconsider Maugaotega's appeal in light of *Cunningham v. California*, 549 U.S. ——, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). *Maugaotega v. Hawai'i*, 549 U.S. ——, 127 S.Ct. 1210, 167 L.Ed.2d 37 (2007).

For the reasons discussed *infra*, we vacate Maugaotega's original extended term sentences and remand to the circuit court for non-extended term sentencing.

## I. BACKGROUND

On June 16, 2004, Maugaotega appealed from the extended term sentences imposed upon him pursuant to Hawai'i Revised Statutes (HRS) § 706–661 (Supp.1999) [1] and HRS § 706–662(4)(a) (1993 & Supp.2003),[2] by

1. In 2004, HRS § 706–661 provided:

   In the cases designated in [HRS § ]706–662 [*see infra* note 2], a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
   
   (1) For murder in the second degree—life without the possibility of parole;
   
   (2) For a class A felony—indeterminate life term of imprisonment;
   
   (3) For a class B felony—indeterminate twenty-year term of imprisonment; and
   
   (4) For a class C felony—indeterminate ten-year term of imprisonment.
   
   The minimum length of imprisonment for sections 2, 3, and 4 shall be determined by the Hawai['']i paroling authority in accordance with [HRS § ]706–669.

   Effective June 22, 2006, the legislature amended HRS §§ 706–661 and –662, *see* 2006 Haw. Sess. L. Act 230, §§ 23, 24, and 54 at 1012–13, 1025, to address concerns raised by the Hawai'i Judicial Council that Hawaii's extended term sentencing scheme faced challenges in federal court that it violated a defendant's right to a jury trial, protected under the sixth amendment to the United States Constitution, as articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny. *See Report of the Committee to Conduct a Comprehensive Review of the Hawai'i Penal Code* at 271–27q (2005); Sen. Stand. Comm. Rep. No. 3215, in 2006 Senate Journal, at 1557; Hse. Stand. Comm. Rep. No. 665–06, in 2006 House Journal, at 1359. The amended version of HRS § 706–661 provided in relevant part:

   The court may sentence a person who satisfies the criteria for any of the categories set forth in [HRS § ]706–662 to an extended term of imprisonment, which shall have a maximum length as follows:
   
   (1) For murder in the second degree—life without the possibility of parole;
   
   (2) For a class A felony—indeterminate life term of imprisonment;
   
   (3) For a class B felony—indeterminate twenty-year term of imprisonment; and
   
   (4) For a class C felony—indeterminate ten-year term of imprisonment.
   
   *In exercising its discretion on whether to impose the extended term of imprisonment or to use other available sentencing options, the court shall consider whether the extended term is necessary for the protection of the public and whether the extended term is necessary in light of the other factors set forth in [HRS § ]706–606.*

   When ordering an extended term sentence, the court shall impose the maximum length of imprisonment....
   
   (Emphasis added.) Effective June 30, 2007, the amended version of HRS § 706–661 expired and the Supp.2003 version, *supra* this note, was reenacted. *See* 2006 Haw. Sess. L. Act 230, § 54 at 1025.

2. In 2004, HRS § 706–662 provided in relevant part:

   A convicted defendant may be subject to an extended term of imprisonment under [HRS § ]706–661[, *see supra* note 1], if the convicted defendant satisfies one or more of the following criteria:
   
   (1) The defendant is a persistent offender *whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless* the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.
   
   (2) The defendant is a professional criminal *whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:*
   (a) The circumstances of the crime show that the defendant has knowingly engaged in criminal activity as a major source of livelihood; or
   (b) The defendant has substantial income or resources not explained to be derived from a source other than criminal activity.
   
   (3) The defendant is a dangerous person *whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless* the defendant has been subjected to a psychiatric or psychological evaluation that documents a significant history of dangerousness to others resulting in criminally violent conduct, and this history makes the defendant a serious danger to others....
   
   (4) The defendant is a multiple offender *whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:*
   (a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
   (b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed or would equal or exceed forty years if the extended term imposed is for a class A felony.

the circuit court of the first circuit, the Honorable Patrick Border presiding, following Maugaotega's conviction of twenty-two offenses alleged in five separate indictments.[3] *See Maugaotega I,* 107 Hawai'i at 401–03, 114 P.3d at 907–09 (detailing a total of twenty-

(5) The defendant is an offender against the elderly, handicapped, or a minor under the age of eight, *whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:*
(a) The defendant attempts or commits any of the following crimes: murder, manslaughter, a sexual offense that constitutes a felony under [HRS] chapter 707, robbery, felonious assault, burglary, or kidnapping; and
(b) The defendant, in the course of committing or attempting to commit the crime, inflicts serious or substantial bodily injury upon a person who is:
  (i) Sixty years of age or older;
  (ii) Blind, a paraplegic, or a quadriplegic; or
  (iii) Eight years of age or younger; and
(c) Such disability is known or reasonably should be known to the defendant.
(6) The defendant is a hate crime offender *whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:*
(a) The defendant is convicted of a crime under [HRS] chapter 707, 708, or 711; and
(b) The defendant intentionally selected a victim, or in the case of a property crime, the property that was the object of a crime, because of hostility toward the actual or perceived race, religion, disability, ethnicity, national origin, gender identity or expression, or sexual orientation of any person....
(Emphases added.) In section 24 of Act 230, effective June 22, 2006, the legislature amended HRS § 706–662 to address the same alleged constitutional infirmities discussed *supra* in note 1. Act 230 amended HRS § 706–662 to provide in relevant part:
A defendant who has been convicted of a felony qualifies for an extended term of imprisonment under [HRS § ]706–661 if the convicted defendant satisfies one or more of the following criteria:
(1) The defendant is a persistent offender in that the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older;
(2) The defendant is a professional criminal in that:
(a) The circumstances of the crime show that the defendant has knowingly engaged in criminal activity as a major source of livelihood; or
(b) The defendant has substantial income or resources not explained to be derived from a source other than criminal activity;
(3) The defendant is a dangerous person in that the defendant has been subjected to a psychiatric or psychological evaluation that documents a significant history of dangerousness to others resulting in criminally violent conduct, and this history makes the defendant a serious danger to others....;
(4) The defendant is a multiple offender in that:
(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed or would equal or exceed forty years if the extended term imposed is for a class A felony;
(5) The defendant is an offender against the elderly, handicapped, or a minor under the age of eight, in that:
(a) The defendant attempts or commits any of the following crimes: murder, manslaughter, a sexual offense that constitutes a felony under [HRS] chapter 707, robbery, felonious assault, burglary, or kidnapping; and
(b) The defendant, in the course of committing or attempting to commit the crime, inflicts serious or substantial bodily injury upon a person who is:
  (i) Sixty years of age or older;
  (ii) Blind, a paraplegic, or a quadriplegic; or
  (iii) Eight years of age or younger; and
(c) Such disability is known or reasonably should be known to the defendant; or
(6) The defendant is a hate crime offender in that:
(a) The defendant is convicted of a crime under [HRS] chapter 707, 708, or 711; and
(b) The defendant intentionally selected a victim or, in the case of a property crime, the property that was the object of a crime, because of hostility toward the actual or perceived race, religion, disability, ethnicity, national origin, gender identity or expression, or sexual orientation of any person....
Effective June 30, 2007, the amended version of HRS § 706–662 expired and the Supp.2003 version, *supra* this note, was reenacted. *See* 2006 Haw. Sess. L. Act 230, § 54 at 1025.

3. The allegations against Maugaotega were contained in five criminal cases, namely, Cr. Nos. 03–1–1897, 03–1–2724, 03–1–2725, 03–1–2726, and 03–1–2727. For the details of the counts contained within each indictment, *see Maugaotega I,* 107 Hawai'i at 402–03, 114 P.3d at 908–09. None of the indictments alleged that, if convicted, Maugaotega could be subject to extended sentencing as a multiple offender for whom extended terms of imprisonment were necessary for the protection of the public.

two counts of which Maugaotega was convicted, including one count of attempted murder in the second degree, in violation of HRS §§ 707–701.5 (1993) and 707–500 (1993), five counts of robbery in the first degree, in violation of HRS § 708–840(1)(b)(i) and/or (ii) (1993 & Supp.2003), three counts of burglary in the first degree, in violation of HRS § 708–810(1)(c) (1993), two counts of sexual assault in the first degree, in violation of HRS § 707–730(1)(a) (1993 & Supp.2003), and two counts of promoting a dangerous drug in the third degree, in violation of HRS § 712–1243 (1993 & Supp.2003)). The prosecution filed five separate motions for extended terms of imprisonment. *Id.* at 402–03, 114 P.3d at 908–09.

On May 17, 2004, the circuit court conducted a sentencing hearing during which it concluded that Maugaotega qualified as a multiple offender under HRS § 706–662(4)(a), *see supra* note 2. In Cr. No. 03–1–1897, the court ruled:

"Under 706–662(4)(a) the requirement must be that the defendant is a multiple offender whose criminal actions are so extensive that a sentence of imprisonment for an extended term is necessary for the protection of the public.

The court shall not make this finding unless the defendant is being sentenced for two or more felonies. Today, [Maugaotega] is being sentenced for 22 felonies, 14 of which involved the named victim, twelve of those involving the·use of a firearm in the commission of the offense. Yet another offense, [p]romoting [p]rison [c]ontraband in the [f]irst [d]egree, involves the use or introduction into the prison of a device which is dangerous in nature, to wit, a shank[,] and [this] represents a heightened danger, particularly when introduced into a prison setting.

A careful examination of [Maugaotega]'s conduct in the period between May and June of 2003 demonstrates a pattern of escalating violence. The ... first offenses in late May were burglaries, primarily involving a risk to property. The second cluster of offenses involved—escalated to robberies with the use of a semi-automatic weapon in furtherance of crimes.

The third cluster of offenses involved [s]exual [a]ssault and [r]obbery, once again facilitated by the use of a firearm. The most violent of the offenses followed in June 26th with the attempted murder of Eric Kawamoto. There were a total of six named victims of violent or potentially violent crimes within the relative short period between late May and the end of June, 2003.

Given the facts of these offenses, the court concludes that [Maugaotega] is a multiple offender under [HRS § ]706–662(4)(a). *These criminal actions were so extensive that the sentence of imprisonment for an extended term is necessary for the protection of the public. Consequently, the [prosecution]'s motion for extended term of imprisonment in Criminal Number 03–1–1897 is granted.*"

*Maugaotega I,* 107 Hawai'i at 403–04, 114 P.3d at 909–10 (quoting May 17, 2004 circuit court proceedings) (brackets in *Maugaotega I* ) (some emphasis added and some in original). The circuit court rendered similar findings of fact regarding Maugaotega's multiple-offender status and the necessity of extended terms for the protection of the public [hereinafter, "the necessity finding"] in granting the other four motions for extended terms of imprisonment and proceeded to sentence Maugaotega to extended terms on all twenty-two counts. *Id.* at 403–05, 114 P.3d at 909–11. On May 17 and May 18, 2004, the circuit court entered judgments convicting Maugaotega of and sentencing him for the twenty-two counts charged in the five criminal cases. *Id.* at 401, 114 P.3d at 907.

On September 8, 2004, the circuit court entered written findings of facts (FOFs) and conclusions of law (COLs) and orders granting the prosecution's motions for extended terms of imprisonment as a multiple offender. *Id.* at 405, 114 P.3d at 911. The circuit court found, *inter alia* that:

... Maugaotega ... is a "multiple offender" whose commitment for an extended term is necessary for the protection of the public because of the following facts:

a. [Maugaotega] has an extensive juvenile criminal history.

b. [Maugaotega]'s criminality has continued despite his prior contacts with the criminal justice system.

c. [Maugaotega] has failed to benefit from the criminal justice system.

d. [Maugaotega] has demonstrated a total disregard for the rights of others and a poor attitude toward the law.

e. [Maugaotega] has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior to the requirements of the law.

f. Due to the quantity and seriousness of the instant offense, [Maugaotega] poses a serious threat to the community and his long[-]term incarceration is necessary for the protection of the public.

*Id.* at 405, 114 P.3d at 911 (some brackets added).

Maugaotega timely appealed from the May 17 and 18, 2004 judgments, arguing that

the circuit court erred in granting each of the prosecution's five motions for extended terms of imprisonment because the [FOF] that extended terms were necessary for the protection of the public was not submitted to a jury and proved beyond a reasonable doubt, in violation of the sixth amendment to the United States Constitution.

*Id.* at 407, 114 P.3d at 913. He contended that " '[a]llowing a judge to pick and choose which factors [a]re "intrinsic" or "extrinsic" leads to the same type of arbitrariness and absurdity' that the United States Supreme Court sought to curb in *Apprendi[ v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),] and *Blakely[ v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ]." *Maugaotega I,* 107 Hawai'i at 407, 114 P.3d at 913. A majority of this court rejected Maugaotega's arguments and, on July 29, 2005, entered a notice and judgment on appeal, affirming the circuit court's May 17 and 18, 2004 judgment and sentences.

On October 27, 2005, Maugaotega filed a petition for a writ of certiorari with the United States Supreme Court, which, on November 2, 2005, docketed the application as No. 05–7309. On February 20, 2007, the Court granted the application and entered a mandate and judgment, vacating our July 29, 2005 judgment and remanding the matter to this court for reconsideration in light of *Cunningham.*

## II. DISCUSSION

### A. The Interplay Between This Court's Intrinsic/Extrinsic Distinction And Jones v. United States, Apprendi, And Their Progeny

#### 1. This court's analysis prior to Maugaotega I

In *State v. Kaua,* 102 Hawai'i 1, 72 P.3d 473 (2003), this court drew a clear distinction between findings that *qualified* a defendant for an extended term of imprisonment and findings that a sentencing judge made in the traditional exercise of discretion in deciding *whether* to impose an extended term pursuant to HRS § 706–662(4). *Id.* at 9–10, 72 P.3d at 481–82. The former determination— *i.e.,* that the defendant was a multiple offender—arose out of multiple felony convictions obtained by proof beyond a reasonable doubt in adjudicative proceedings, before a trier of fact, subject to criminal due process protections, while the latter determination—*i.e.,* the necessity finding—entailed a traditional exercise of discretion by the sentencing judge, reviewable for abuse of discretion:

It is settled that an extended term sentencing hearing is "a separate criminal proceeding apart from the trial of the underlying substantive offense," wherein "all relevant issues should be established by the state beyond a reasonable doubt." *State v. Kamae,* 56 Haw. 628, 635, 548 P.2d 632, 637 (1976). In *State v. Huelsman,* 60 Haw. 71, 588 P.2d 394 (1979), this court addressed the procedural protections to be accorded criminal defendants at an extended term sentencing hearing and announced a two-step process in which a sentencing court must engage in order to impose an extended term sentence. *Id.* at 76, 588 P.2d at 398. For purposes of a motion for an extended term of imprisonment under HRS § 706–662(4), the first step requires a finding beyond a reasonable doubt "that

the defendant is a multiple offender, which finding may not be made unless the defendant is being sentenced for two or more felonies or is under sentence for a felony and the maximum terms of imprisonment authorized for the defendant's crimes meet certain requisites." *Id.* In the event that the sentencing court finds that the defendant is a multiple offender under subsection (4), the second step requires the sentencing court to determine whether "the defendant's commitment for an extended term is necessary for the protection of the public." *Id.* at 77, 588 P.2d at 398.

The determination that the defendant is a member of the class of offenders to which the particular subsection of [HRS] § [706-]662 applies involves "historical facts," the proof of which exposes the defendant to punishment by an extended term sentence, similarly to the manner in which the proof of his guilt exposes him to ordinary sentencing.... But when the status of the defendant has been established, the process by which the court determines that the defendant's commitment for an extended term is necessary for the protection of the public ... is one which deals with the subject matter of ordinary sentencing. *Id.* at 79–80, 588 P.2d at 400. As such, the first phase of the *Huelsman* two-step process must afford a defendant "the full panoply of constitutional protections guaranteed in criminal proceedings," *see State v. Melear*, 63 Haw. 488, 498–99, 630 P.2d 619, 627 (1981), which includes the rights to notice and an opportunity to be heard, cross-examination of witnesses appearing at the sentencing hearing, and the evidentiary safeguards set forth in the Hawai'i Rules of Evidence (HRE). *See Kamae*, 56 Haw. at 638, 548 P.2d at 638–39. By contrast, the procedural safeguards to which the second phase of the *Huelsman* two-step process is subject are those applica-

ble to ordinary sentencing, and, therefore, "the HRE are not controlling." *State v. Loa*, 83 Hawai'i 335, 355, 926 P.2d 1258, 1278 (1996). Moreover, "[u]nder ordinary sentencing procedures, the court is 'afforded wide latitude in the selection of penalties from those prescribed and in the determination of their severity. This authority is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory and constitutional ·commands have not been observed.'" *State v. Okumura*, 78 Hawai'i 383, 413, 894 P.2d 80, 110 (1995).

*Kaua*, 102 Hawai'i at 9–10, 72 P.3d at 481–82. We explained that the two-stage extended term sentencing process articulated in *Huelsman*

is limited to enhanced sentencing, such as extended prison terms pursuant to HRS §§ 706–661, 706–662, and 706–664[ (1993) [4]], in which the "determination that the defendant is a member of the class of offenders to which the particular [statute] applies involves 'historical facts.'" *Huelsman*, 60 Haw. at 79, 588 P.2d at 400. This is because such "historical facts" are wholly extrinsic to the specific circumstances of the defendant's offense and therefore have no bearing on the issue of guilt *per se*. By contrast, if the "aggravating circumstances" justifying the imposition of an enhanced sentence are "enmeshed in," or, put differently, intrinsic to the "commission of the crime charged," then, in accordance with the ... rule [of *State v. Estrada*, 69 Haw. 204, 738 P.2d 812 (1987)], such aggravating circumstances "must be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact." *[State v.]*

4. HRS § 706–664 provides:
   Hearings to determine the grounds for imposing extended terms of imprisonment may be initiated by the prosecutor or by the court on its own motion. The court shall not impose an extended term unless the ground therefor has been established at a hearing after the conviction of the defendant and on written

notice to the defendant of the ground proposed. Subject to the provisions of [HRS § ]706–604[, pertaining to notice and opportunity to be heard with respect to sentence], the defendant shall have the right to hear and controvert the evidence against the defendant and to offer evidence upon the issue.

*Schroeder*, [10 Haw.App. 535, 545,] 880 P.2d [208, 212 (1992) ].

*[State v. ]Schroeder*, 76 Hawai'i [517,] 528, 880 P.2d [192,] 203 [ (1994) [hereinafter, *Schroeder II* ] ] (some brackets added and some in original) (emphasis in original). *Id.* at 10–11, 72 P.3d at 482–83 (some brackets added and some in original).

Prior to *Kaua*, in *State v. Tafoya*, 91 Hawai'i 261, 982 P.2d 890 (1999), this court had augmented the groundwork for the intrinsic/extrinsic distinction, noting that

[i]n reviewing our previous case law, it is apparent that "intrinsic" factors, required to be pled in the indictment and found by the jury, are distinguishable in that they are contemporaneous with, and enmeshed in, the statutory elements of the proscribed offense. Contrarily, "extrinsic" factors are separable from the offense itself in that they involve consideration of collateral events or information. Occurrence at a prior time is indicative, although not dispositive, of a conclusion that a factor is "extrinsic."

*Id.* at 271, 982 P.2d at 900. We held that the factors set forth in HRS § 706–662(5), *see supra* note 2, involving offenses against the elderly, handicapped, or very young, were intrinsic to the offense charged and, therefore, had to be pled and proved to the trier of fact, overruling *Huelsman* to the extent it permitted *all* facts enumerated in HRS § 706–662 to be found by the sentencing judge. *Id.* at 271–72, 982 P.2d at 900–01.

We reached the foregoing result in part based upon our concerns that the United States Supreme Court, in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), "called into question the constitutional vitality of allowing a sentencing judge to make [FOFs] leading to an extended term of imprisonment." *Tafoya*, 91 Hawai'i at 272, 982 P.2d at 901. As we later noted in *Kaua*, however, the reasoning articulated in *Jones* could ultimately be reconciled with this court's intrinsic/extrinsic analysis:

In *Jones* ..., the United States Supreme Court addressed the question whether certain provisions of a car-jacking statute, which prescribed enhanced sentencing penalties, created additional elements of the offense, which would have to be found by the jury, or merely described sentencing considerations, which could permissibly be determined by the sentencing judge. In concluding the former, the *Jones* Court essentially drew a distinction, as this court did in *Schroeder [II]* and *Tafoya*, between (1) factual findings that were inextricably enmeshed in the charged offense and therefore probative of the defendant's commission of that offense and (2) factual findings that were wholly independent of the offense charged in the indictment and spoke only to characteristics of the defendant that were pertinent to the appropriate degree of punishment. The *Jones* Court noted that "[m]uch turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." 526 U.S. at 232[, 119 S.Ct. 1215].... Thus, *Jones* declared that "any fact (other than [a] prior conviction) that increased the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." [*Id.*] at 243[, 119 S.Ct. 1215].... *Tafoya* recognized, however, that to extend the *Jones* rationale to "extrinsic" facts "would contaminate the jury's required focus on the factual circumstances surrounding the [charged] offense and potentially require the introduction of inadmissible prior bad act[s] or overly prejudicial evidence to require the jury to make such findings." *Tafoya*, 91 Hawai'i at 273 n. 15, 982 P.2d at 902 n. 15.

*Kaua*, 102 Hawai'i at 11–12, 72 P.3d at 483–84 (some brackets added and some in original). In short, in *Kaua* we concluded that *Jones* (1) merely confirmed our analysis that, where a fact was *intrinsic* to the offense charged, it had to be proved to the trier of fact beyond a reasonable doubt and (2) left unchanged the rule that the sentencing court, not the trier of fact, weighed *extrinsic* facts in an exercise of its traditional discretionary sentencing authority. *Id.*

We further concluded in *Kaua* that, insofar as the "hate-crime" law at issue in *Apprendi*—establishing an extended term for a defendant who committed a crime motivated by an improper bias toward, *inter alia,* the victim's race, gender, or religion [5]—was clearly intrinsic in nature, *Apprendi,* like *Jones,* comported with our intrinsic/extrinsic analysis in *Tafoya* and *Schroeder II* and did not require that *extrinsic* facts, including those extrinsic facts implicated in HRS § 706–662(4), be found by the trier of fact rather than the judge.[6]  *Id.* at 12–13, 72 P.3d at 484–85 (citing *Tafoya,* 91 Hawai'i at 271–72, 982 P.2d at 900–01; *Schroeder II,* 76 Hawai'i at 528, 880 P.2d at 203; *State v. Carvalho,* 101 Hawai'i 97, 63 P.3d 405 (App.2002) (holding that HRS § 706–662 was not constitutionally infirm and reading *Tafoya* in harmony with *Apprendi* )).

In the years following *Apprendi,* the United States Supreme Court refined its sixth amendment analysis in, *inter alia, Blakely* and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); neither case altered our conclusion that Hawaii's extended term sentencing regime complied with *Apprendi* and a criminal defendant's constitutional right to a jury trial.

In *Blakely,* the United States Supreme Court overturned a Washington state determinate-sentencing-guideline scheme wherein the defendant's conviction of kidnapping rendered him liable to a "presumptive guideline range" sentence of between forty-nine and fifty-three months of imprisonment.  542 U.S. at 298, 124 S.Ct. 2531.  The Washington court, however, had sentenced Blakely to an exceptional "upper range" term of ninety-months' imprisonment by making a required judicial finding that Blakely had committed the crime with "deliberate cruelty."  *Id.* On Blakely's appeal to the United States Supreme Court, Washington argued that the statutory maximum for Blakely's offense was, in fact, 120 months, dependent upon the appropriate findings being made, and, therefore, that the sentencing court had acted within its legitimate discretionary authority in sentencing Blakely to ninety months' imprisonment.  *Id.* at 303, 124 S.Ct. 2531.  The *Blakely* majority rejected this argument, concluding that "[the Court's] precedents make clear … that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  *Id.* (citing *Ring v. Arizona,* 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Harris v. United States,* 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348) (emphasis in *Blakely* ).  Insofar as the Washington court could exceed the presumptive range only by relying on additional, judicially-determined facts such as that the defendant had acted with "deliberate cruelty," Blakely's sentence violated the *Apprendi* rule because "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."  *Id.* at 303–04, 124 S.Ct. 2531 (emphasis in original).[7]

5.  In so concluding, we noted the similarity between the New Jersey statute at issue in *Apprendi* and HRS § 706–662(6) (Supp.2001), *see supra* note 2, which established a similar racial basis for an extended sentence, if the crime in question were motivated by an improper bias.  *Id.* at 12 n. 8, 72 P.3d at 484 n. 8.

6.  Moreover, we concluded that the factors set out in HRS § 706–662(5) and (6), in contrast to those articulated in HRS § 706–662(1), (3), and (4), *see supra* note 2, were intrinsic to the crime charged and, hence, had to be pled in the charging instrument and proved beyond a reasonable doubt to the trier of fact. *Kaua,* 102 Hawai'i at 13, 72 P.3d at 485 (citing *Tafoya,* 91 Hawai'i at 271–72, 982 P.2d at 900–01; *Schroeder II,* 76 Hawai'i at 528, 880 P.2d at 203).

7.  Relevant to our statutory structure, wherein the imposition of an extended term sentence is discretionary, *see, e.g.,* HRS § 706–661 ("[A] person who has been convicted of a felony *may* be sentenced to an extended indeterminate term of imprisonment.") (emphasis added), the *Blakely* Court also concluded that

[n]or does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure.  He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense.  Whether the judicially determined facts require a sentence enhancement *or merely allow it,* the verdict alone does not authorize the sentence.

542 U.S. at 305 n. 8, 124 S.Ct. 2531, *quoted in Cunningham,* 549 U.S. at ——, 127 S.Ct. at 865

In *State v. Rivera*, 106 Hawai'i 146, 102 P.3d 1044 (2004), we distinguished *Blakely* on the grounds: (1) that our indeterminate sentencing scheme contains no presumptive guideline ranges; and (2) that the facts at issue in *Blakely*—i.e., that Blakely had acted with deliberate cruelty—were intrinsic to the charged offense, which, under our precedent, would be for the trier of fact, rather than the sentencing judge, to find in any event. *See id.* at 159–60, 102 P.3d at 1057–58. We affirmed Rivera's extended term sentences, imposed pursuant to HRS § 706–662(1) and (4), *see supra* note 2, as a persistent and multiple offender because the facts upon which the sentences relied—i.e., prior and concurrent convictions—were "outside the purview of the jury's fact-finding function." *Id.* at 160, 102 P.3d at 1058. With regard to the necessity finding, we reasoned that, insofar as a sentencing judge was required to consider the same factor during standard sentencing, pursuant to HRS § 706–606(2)(c) (1993),[8] the necessity finding was not requisite for imposing an extended term but, rather, was an expression of traditional judicial sentencing discretion and, therefore, did not implicate or violate *Blakely. Id.* at 161–64, 102 P.3d at 1059–62.

### 2. *Maugaotega I*

In *Maugaotega I*, we opined at the outset that both *Kaua* and *Rivera* confirmed that Hawaii's extended term sentencing scheme comported with *Apprendi* and, therefore, disposed of Maugaotega's point of error. 107 Hawai'i at 402, 114 P.3d at 908. Nevertheless, being aware of the United States Supreme Court's opinion in *Booker*, we took the

"opportunity to reassert the viability of this court's analytical 'intrinsic/extrinsic' approach to Hawaii's statutory extended term sentencing scheme." *Id.*

In *Booker*, the United States Supreme Court analyzed the federal sentencing guidelines in light of *Apprendi* and its progeny. 543 U.S. at 226–44, 125 S.Ct. 738. The Court concluded that the mandatory nature of the guidelines violated *Apprendi* because they required the sentencing judge to find additional facts before a sentence could be extended beyond the standard prescribed range, which was based on the elements of the crime proved beyond a reasonable doubt to a jury. 543 U.S. at 235, 125 S.Ct. 738 (quoting *Blakely*, 542 U.S. at 305, 124 S.Ct. 2531) (reiterating that no matter whether the judge must make a specific finding—e.g., in *Apprendi*, of racial bias—or *any* additional finding, a defendant's right to a jury trial is violated when " 'the jury's verdict alone does not authorize the sentence[ but, rather, t]he judge acquires that authority only upon finding some additional fact.' "), *quoted in Maugotega I*, 107 Hawai'i at 408, 114 P.3d at 914. The United States Supreme Court explained that

[i]f the Guidelines as currently written could be read as merely *advisory* provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.

(a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to criminal conduct;

(c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(characterizing the foregoing language as a holding and reiterating that "broad discretion ... to determine whether an enhanced sentence is warranted in any particular case[ ] does not shield a sentencing system from the force of our decisions") (brackets and emphasis added).

8. HRS § 706–606 (1993), entitled "Factors to be considered in imposing a sentence," provides:

The court, in determining the particular sentence to be imposed, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

*Booker,* 543 U.S. at 233, 125 S.Ct. 738 (emphasis added). Therefore, the *Booker* Court's solution was to excise the mandatory portion of the sentencing guidelines in order to render them actually discretionary, thereby establishing a true sentencing range up to the absolute maximum authorized by the elements of the charged offense, within which a judge was free to select a just sentence in the exercise of traditional discretion. *Booker,* 543 U.S. at 234–35, 245, 125 S.Ct. 738.

In *Maugaotega I,* we held that "inasmuch as (1) *Booker's* holding is limited to the federal sentencing guidelines, and (2) Hawaii's extended term sentencing structure is not mandatory,"[9] "*Booker* has no bearing on this court's disposition [of Maugaotega's appeal]." 107 Hawai'i at 402, 409, 114 P.3d at 908, 915. In reaching this conclusion, we again relied on the distinction between intrinsic factors, such as those found in HRS § 706–662(5) and (6), *see supra* note 2, involving factors pertaining to the age, race, or other characteristics of the victim, which are enmeshed in the circumstances surrounding the commission of the charged offense, and extrinsic factors pertaining to the character of the defendant and reaffirmed our conclusion that the necessity finding remained the province of the sentencing court in the traditional exercise of its discretion. 107 Hawai'i at 408–10, 114 P.3d at 914–16 (citing *Rivera,* 106 Hawai'i at 150, 157, 163, 102 P.3d at 1048, 1055, 1061).

B. *Cunningham Leaves No Doubt That A Majority Of The United States Supreme Court Rejects The Intrinsic/Extrinsic Distinction.*

Justice Kennedy, joined by Justice Breyer in his dissenting opinion in *Cunningham,* eloquently articulated an iteration of this court's intrinsic/extrinsic distinction and the compelling rationale underlying it:

**9.** In *Cunningham,* the Court emphasized that "*[a]ny* fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 549 U.S. at ——— n. 14, 127 S.Ct. at 869 n. 14 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348) (bracketed material altered) (emphasis added in *Cunningham* ). Moreover, the Court held that whether an extended term sentence was mandatory or discretionary was irrelevant for purposes of *Apprendi* compliance

In my view the *Apprendi* line of cases remains incorrect. Yet there may be a principled rationale permitting those cases to control within the central sphere of their concern, while reducing the collateral, widespread harm to the criminal justice system and the corrections process now resulting from the Court's wooden, unyielding insistence on expanding the *Apprendi* doctrine far beyond its necessary boundaries. The Court could distinguish between sentencing enhancements based on the nature of the offense, where the *Apprendi* principle would apply, and sentencing enhancements based on the nature of the offender, where it would not. California attempted to make this initial distinction. Compare Cal. Rule of Court 4.421(a) (Criminal Cases) (West 2006) (listing aggravating "[f]acts relating to the crime"), with Rule 4.421(b) (listing aggravating "[f]acts relating to the defendant"). The Court should not foreclose its efforts.

. . . .

As dissenting opinions have suggested before, the Constitution ought not to be interpreted to strike down all aspects of sentencing systems that grant judicial discretion with some legislative direction and control. Judges and legislators must have the capacity to develop consistent standards, standards that individual juries empaneled for only a short time cannot elaborate in any permanent way. See, e.g., *Blakely,* 542 U.S. [296] at 314[, 124 S.Ct. 2531] . . . (opinion of O'Connor, J.); *id.*[ ] at 326–327[, 124 S.Ct. 2531] . . . (opinion of Kennedy, J.) (explaining that "[s]entencing guidelines are a prime example of [the] collaborative process" between courts and legislatures). Judges and sentencing officials have a broad view and long-term commitment to correctional systems. Juries

so long as the extended sentence *required* a judicial finding of fact. *Id.* 549 U.S. at ———, 127 S.Ct. at 865 (quoting *Blakely,* 542 U.S. at 305 n. 8, 124 S.Ct. 2531). In light of this, and our conclusion that the *Cunningham* majority would view the necessity finding (whether in HRS § 706–662 or ensconced in HRS § 706–606) as a predicate required finding, *see infra* section II. D.1, it is unlikely that the *Maugaotega I* distinction would survive scrutiny under *Cunningham.*

do not. Judicial officers and corrections professionals, under the guidance and control of the legislature, should be encouraged to participate in an ongoing manner to improve the various sentencing schemes in our country.

This system of guided discretion would be permitted to a large extent if the Court confined the *Apprendi* rule to sentencing enhancements based on the nature of the offense. These would include, for example, the fact that a weapon was used; violence was employed; a stated amount of drugs or other contraband was involved; or the crime was motivated by the victim's race, gender, or other status protected by statute. Juries could consider these matters without serious disruption because these factors often are part of the statutory definition of an aggravated crime in any event and because the evidence to support these enhancements is likely to be a central part of the prosecution's case.

On the other hand, judicial determination is appropriate with regard to factors exhibited by the defendant. These would include, for example, prior convictions; cooperation or noncooperation with law enforcement; remorse or the lack of it; or other aspects of the defendant's history bearing upon his background and contribution to the community. This is so even if the relevant facts were to be found by the judge by a preponderance of the evidence. These are facts that should be taken into account at sentencing but have little if any significance for whether the defendant committed the crime. See Berman & Bibas, Making Sentencing Sensible, 4 Ohio St. J.Crim. L. 37, 55–57 (2006).

The line between offense and offender would not always be clear, but in most instances the nature of the offense is defined in a manner that ensures the problem of categories would not be difficult. *Apprendi* suffers from a similar line-drawing problem between facts that must be considered by the jury and other considerations that a judge can take into account. The main part of the *Apprendi* holding could be retained with far less systemic disruption. It is to be regretted that the Court's decision today appears to foreclose consideration of this approach or other reasonable efforts to develop systems of guided discretion within the general constraint that *Apprendi* imposes.

*Cunningham,* 549 U.S. at ——, 127 S.Ct. at 872–73 (Kennedy, J., dissenting, with whom Breyer, J., joined) (some underscoring in original and some added). The majority tersely rejected what it called "the bifurcated approach Justice Kennedy proposes." *Id.* 549 U.S. at —— n. 14, 127 S.Ct. at 869 n. 14 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348) ("*[A]ny* fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (brackets and emphasis in *Cunningham* ).

C. *Cunningham Eliminated The Role Of The Sentencing Judge In Finding Facts Necessary For The Imposition Of An Extended Term Of Imprisonment Outside The Maximum Authorized Solely By The Jury's Verdict.*

*Cunningham* addressed California's determinate sentencing law (DSL), which allowed a sentencing judge to depart from a presumptive middle-range sentence and increase a defendant's sentence if the court found, by a preponderance of the evidence, that additional facts in aggravation, relating either to the crime or the character of the defendant, were present that justified an upper range sentence. 549 U.S. at —— & n. 1, 127 S.Ct. at 860–62 & n. 1. The DSL expressly required that no elements necessary to convict the defendant of the underlying offense could be relied upon to impose an enhanced term. *Id.* 549 U.S. at ——, 127 S.Ct. at 863.

Justice Ginsburg, writing for the majority, made it clear at the outset of *Cunningham* that

the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. "[T]he relevant 'statutory maximum,' " this Court has clarified, "is not the maximum sentence a judge may impose after finding

**444**

additional facts, but the maximum he may impose *without* any additional findings." 549 U.S. at ——, 127 S.Ct. at 860 (citing *Booker; Blakely; Ring; Apprendi*) (quoting *Blakely,* 542 U.S. at 303–04, 124 S.Ct. 2531) (internal citations omitted)(emphasis in *Blakely*). Moreover, by its rejection of Justice Kennedy's intrinsic/extrinsic compromise, *supra,* the majority nailed down the proposition that "facts" included *any* findings of fact made by a judge—even those pertaining to matters within the traditional sphere of judicial sentencing discretion—that were prerequisites to the imposition of an extended term sentence. *See* 549 U.S. at —— n. 14, 127 S.Ct. at 869 n. 14.

This court has consistently asserted that the necessity finding, strictly speaking, is not a "fact" subject to determination by the trier of fact but, rather, a traditional expression of a sentencing court's expertise in weighing the factors set forth in HRS § 706–606, *see supra* note 8, which include the protection of the public, in order to determine the appropriate punishment. *See State v. White,* 110 Hawai'i 79, 89–90, 129 P.3d 1107, 1117–18 (2006); *Rivera,* 106 Hawai'i at 162–64, 102 P.3d at 1060–62. We reasoned that only after the sentencing judge has determined that imprisonment, not probation, is necessary for the protection of the public do the factors enumerated in HRS § 706–662(4)—*i.e.,* prior convictions expressly exempted from the *Apprendi* rule—authorize the imposition of an extended term sentence. *White,* 110 Hawai'i at 89–90, 129 P.3d at 1117–18; *Rivera,* 106 Hawai'i at 163, 102 P.3d at 1061.

Justice Alito made much the same argument in *Cunningham,* 549 U.S. at —— & n. 2, 127 S.Ct. at 873–74 & n. 2 (Alito, J., dissenting) (arguing that "the Court has consistently stated that when a trial court makes a fully discretionary sentencing decision ... the Sixth Amendment permits the court to base the sentence on its own factual findings" and noting that four of the justices on the Court when *Booker* was issued concurred that " 'history does not support a right to jury trial in respect to sentencing facts' ") (quoting *Booker,* 543 U.S. at 328, 125 S.Ct. 738 (Breyer, J., dissenting in part)) (some internal quotation signals and brackets omitted). He questioned, first, whether a determination that an aggravating factor justified an extended sentence was, indeed, a "fact" for sixth amendment purposes:

[I]t is not at all clear that a California court must find some case-specific, adjudicative "fact" (as opposed to identifying a relevant policy consideration) before imposing an upper term sentence. What a California sentencing court must find is a *"circumstanc[e] in aggravation,"* which, California's Court Rules make clear, can include any "criteria reasonably related to the decision being made."

*Cunningham,* 549 U.S. at ——, 127 S.Ct. at 879 (Alito, J., dissenting) (quoting California Penal Code Ann. § 1170(b); California Rule of Court 4.408(a)) (emphasis in *Cunningham*). Justice Alito then noted that:

California courts are thus empowered to take into account the full panoply of factual and policy considerations that have traditionally been considered by judges operating under fully discretionary sentencing regimes—the constitutionality of which the Court has repeatedly reaffirmed. California law explicitly authorizes a sentencing court to take into account, for example, *broad sentencing objectives* like punishment, deterrence, restitution, and uniformity, *see* Rule 4.410, and even a judge's "subjective belief" as to the appropriateness of the sentence, as long as the final result is reasonable. Policy considerations like these have always been outside the province of the jury and do not implicate the Sixth Amendment concerns expressed in *Apprendi.*

*Id.* (some internal citations omitted) (emphasis added).

In Hawai'i, our "broad sentencing objectives," set forth in HRS § 706–606, *see supra* note 8,[10] encompass, like Cal. Court Rule

10. *Compare* HRS § 706–606, *supra* note 8, *with* Cal. Rule of Court 4.410(a):
  (a) General objectives of sentencing include:
    (1) Protecting society;

(2) Punishing the defendant;
(3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses;

4.410, the traditional sentencing objectives of punishment, deterrence, restitution, rehabilitation, and uniformity. As noted, we have long concluded: (1) that the necessity finding, as articulated throughout HRS § 706-662, is, in fact, merely an expression of a sentencing judge's traditional application of HRS § 706-606 to determine that a period of imprisonment was warranted as provided by HRS §§ 706-656(2) (Supp.1996) (terms of imprisonment for second degree murder and attempted second degree murder),[11] -659 (Supp.1994) (terms of imprisonment for a class A felony),[12] and -660 (1993) (terms of imprisonment for a class B or class C felony);[13] (2) that any extended term sentence was separately predicated upon the other "facts" articulated in HRS § 706-662(1) to (6); and (3) that, insofar as the necessity finding was not a finding made solely within the extended sentencing statute, it was not dissonant with *Apprendi* and its progeny. *White,* 110 Hawai'i at 89–90, 129 P.3d at 1117–18; *Rivera,* 106 Hawai'i at 162–64, 102 P.3d at 1060–62.

*Cunningham* rejected our long-held belief. California's DSL system created a presumptive middle term from which the sentencing court could not depart without first entering into the record findings of circumstances in aggravation or mitigation, to be determined by considering all aspects of the defendant's case, including statements submitted by the victim or the victim's family.[14] *Id.* 549 U.S. at ——, 127 S.Ct. at 861–62. The circumstances in aggravation were defined as "'*facts* which justify the imposition of the upper prison term.'" *Id.* 549 U.S. at ——, 127 S.Ct. at 862 (quoting Cal. Court Rule 4.405(d)) (emphasis in *Cunningham* ).

The *Cunningham* majority relied on the California language defining the circumstances in aggravation as "facts," distinguished those findings from the general sentencing factors enumerated separately in Rule 4.410(a), and concluded that, in determining that an aggravating circumstance justified an upward departure from the default middle term of imprisonment, the California sentencing court was engaging in fact-finding that increased the defendant's sentence beyond that authorized by the jury's verdict, thereby offending the *Apprendi* rule. *Id.* 549 U.S. at ——, ——, 127 S.Ct. at 863, 870–71.

In considering whether "[t]he defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for the protection of the public[,]" HRS § 706-662(4) expressly prescribes certain criteria. As directed by the plain language of HRS § 706-662(4), *see supra* note 2, the circuit court in the present matter expressly entered the necessity finding in its written

(4) Deterring others from criminal conduct by demonstrating its consequences;
(5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration;
(6) Securing restitution for the victims of crime; and
(7) Achieving uniformity in sentencing.

11. HRS § 706-656(2) provides in relevant part:

Except as provided in [HRS § ]706-657, pertaining to enhanced sentence for second degree murder, persons convicted of second degree murder and attempted second degree murder shall be sentenced to life imprisonment with possibility of parole.

12. HRS § 706-659 provides in relevant part:

Notwithstanding part II[, pertaining to probation]; [HRS §§ ]706-605, 706-606, 706-606.5, 706-660.1, 706-661, and 706-662; and any other law to the contrary, a person who has been convicted of a class A felony, except class A felonies defined in chapter 712, part IV[, pertaining to drugs and intoxicating com-

pounds], shall be sentenced to an indeterminate term of imprisonment of twenty years without the possibility of suspension of sentence or probation. . . .

13. HRS § 706-660 provides in relevant part:

A person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment except as provided for in [HRS § ]706-660.1 relating to the use of firearms in certain felony offenses and [HRS § ]706-606.5 relating to repeat offenders. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
(1) For a class B felony—10 years; and
(2) For a class C felony—5 years.
. . . .

14. The nonexhaustive list of aggravating circumstances are provided in Cal. Court Rule 4.421 relating to the defendant, the crime, and "'[a]ny other facts statutorily declared to be circumstances in aggravation,'" *id.* 549 U.S. at ——, 127 S.Ct. at 862.

orders granting all five motions for extended term sentencing. Although the necessity finding is *also* a traditional sentencing consideration articulated in HRS § 706-606(2)(c), *see supra* note 8, as was true in California's system, the reasoning of the *Cunningham* majority leaves no doubt that, like California's DSL system, a majority of the United States Supreme Court would consider the necessity finding set forth in HRS § 706-662(4) as separate and distinct from traditional sentencing considerations and, instead, as a predicate to imposing an extended prison term on a defendant that, under *Apprendi* and its progeny, must either be admitted by the defendant or be proved beyond a reasonable doubt to the trier of fact, 530 U.S. at 490, 120 S.Ct. 2348.

Moreover, it is a near certitude that the *Cunningham* majority would deem HRS §§ 706-656(2), -659, and -660, *see supra* notes 11, 12, and 13, as the presumptive, standard felony sentences, akin to the middle term in *Cunningham*, 549 U.S. at ——, 127 S.Ct. at 861-62, and the standard range in *Blakely*, 542 U.S. at 299, 124 S.Ct. 2531. The *Cunningham* majority reiterated what it perceived as a core message of *Apprendi* and its progeny:

> "Our precedent makes clear ... that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. ... In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law make essential to the pun-

ishment,' ... and the judge exceeds his proper authority."

*Cunningham*, 549 U.S. at ——, 127 S.Ct. at 865 (quoting *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531 (quoting 1 J. Bishop, *Criminal Procedure* § 87 at 55 (2d ed. 1872))(citing, *inter alia, Ring*, 536 U.S. at 602, 122 S.Ct. 2428; *Harris*, 536 U.S. at 563, 122 S.Ct. 2406)) (emphasis in *Blakely* ). Later in the opinion, the *Cunningham* majority repeated the point:

> We cautioned in *Blakely* ... that broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our decisions. If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.

*Id.* 549 U.S. at ——, 127 S.Ct. at 869 (citing *Blakely*, 542 U.S. at 305 & n. 8, 124 S.Ct. 2531). In light of our conclusion, *supra*, that a majority of the United States Supreme Court would characterize the necessity finding in HRS § 706-662(4) as a predicate judicial finding for *Apprendi* purposes, the statutory maximum under our current law would be the standard indeterminate maximum sentences set forth in HRS §§ 706-656, -659 and -660, insofar as they represent "the maximum [a judge] may impose without any additional findings," *id.*

Inasmuch as (1) HRS § 706-662, in all of its manifestations, authorizes the sentencing court to extend a defendant's sentence beyond the "standard term" authorized solely by the jury's verdict (2) by requiring the sentencing court, rather than the trier of fact, to make an additional necessity finding that (3) does not fall under *Apprendi's* prior-or-concurrent-convictions [15] exception, we

---

**15.** The United States Supreme Court has always exempted prior convictions from the *Apprendi* rule: "[T]he Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based upon a fact, *other than a prior conviction*, not found by a jury or admitted by the defendant." *Cunningham*, 549 U.S. at ——, 127 S.Ct. at 860 (citing *Booker; Blakely; Ring; Apprendi* ) (emphasis added). The Court

bases the exception on the fact that prior convictions have themselves been subject to the sixth amendment right to a jury trial and the accompanying requirement of proof beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 487, 497, 120 S.Ct. 2348. Although, to our knowledge, the Court has never directly addressed the issue, we see no reason why the same exception would not apply to multiple concurrent convictions under

hold that the statute is unconstitutional on its face.[16] Therefore, Maugaotega's extended term sentences imposed by the circuit court violated his sixth amendment right to a jury trial and were illegal. Moreover, similar constitutional infirmities infect HRS § 706–662 as a whole, to the extent that each subsection requires the sentencing court to make the offending necessity finding.[17] *See supra* note 2.

### D. *The Task Of Conforming The Extended Term Sentencing Statutes To Cunningham Lies With The Legislature.*

Justice Ginsburg suggested two remedies available to the states with respect to their extended term sentencing schemes in the aftermath of *Cunningham:*

> We note that several States have modified their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing. They have done so by calling upon the jury—either at trial or in a separate sentencing proceeding—to find any fact necessary to the imposition of an elevated sentence.... Other States have chosen to permit judges genuinely "to exercise broad discretion ... within a statutory range," which, "everyone agrees," encounters no Sixth Amendment shoal.

549 U.S. at ——, 127 S.Ct. at 871 (quoting *Booker,* 543 U.S. at 233, 125 S.Ct. 738) (footnotes omitted) (some ellipsis points added and some in original); *see also Smylie v. State,* 823 N.E.2d 679, 685 (Ind.2005) (recognizing two solutions in a sentencing scheme very similar to Hawaii's: (1) the present system of fixed terms, with fact-finding assigned to a jury or (2) reform of the system to create a true sentencing range). Our legislature attempted to chart a third course by enacting amendments to HRS §§ 706–661 and –662 in Act 230 of the 2006 legislative session, *see supra* notes 1 and 2.

1. *The repealed amendments of Act 230 would not likely survive review post-Cunningham.*

In light of the *Cunningham* majority's insistence that *any* fact, however labeled, that serves as a basis for an extended term sentence must be proved beyond a reasonable doubt to the trier of fact, we believe that the United States Supreme Court (or, at least, a majority of it) would give short shrift to the "solution" offered in Act 230, which relocated the necessity finding from HRS § 706–662 to HRS § 706–661 and cross-referenced it to the traditional sentencing factors contained in HRS § 706–606. The *Cunningham* majority would obviously characterize *any* extended term sentence based upon a sentencing court's necessity finding—regardless of the particular statutory source of that finding—as an unconstitutional denigration of the jury's role, because such a system would be deemed to "allocate[ ] to judges sole authority to find facts permitting the imposition of an upper term sentence, ... violat[ing] the Sixth Amendment." *Cunningham,* 549 U.S. at ——, 127 S.Ct. at 870.

It is noteworthy that the *Cunningham* majority rejected California's attempt to analogize its three-tier sentencing structure to the newly discretionary federal sentencing guide-

---

HRS § 706–662(4), insofar as they are subject to the same sixth amendment protections.

**16.** As noted, the 2006 session of the legislature, through Act 230, temporarily excised the language offensive to *Cunningham* from HRS § 706–662, *see supra* note 2, and inserted it into HRS § 706–661, *see supra* note 1. However, for the reasons discussed *infra* in section II.D.1, we do not believe, in light of *Cunningham,* that sections 23 and 24 of Act 230 would survive scrutiny in the federal courts.

**17.** *Any* aggravating fact that HRS § 706–662 requires the sentencing court to find as a precondition to an extended prison term is now constitutionally infirm if not exempt under *Cunningham,* such as prior or concurrent convictions or a fact admitted by the defendant. 549 U.S. at ——, 127 S.Ct. at 860; *see also supra* note 15.

This court recognized the constitutional infirmities contained in HRS § 706–662(5) and (6) in *Tafoya,* 91 Hawai'i at 271–72, 982 P.2d at 900–01 (holding that the facts pertaining to the victim's special status and the defendant's knowledge of that status were intrinsic to the crime and, hence, that the sixth amendment required that the facts be found by the trier of fact) and in *Kaua,* 102 Hawai'i at 13, 72 P.3d at 485 (holding that the facts set forth in HRS § 706–662(5) and (6) were intrinsic to the crime and for determination by the trier of fact). The legislature did not, however, amend the language of HRS § 706–662(5) and (6) to reflect the requirements of *Tafoya* or *Kaua.*

lines scheme established and sanctified in *Booker:*

> California's DSL does not resemble the advisory system the *Booker* Court had in view. Under California's system, judges are not free to exercise their "discretion to select a specific sentence within a defined range." California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies.

*Id.* 549 U.S. at ——, 127 S.Ct. at 870 (quoting *Booker,* 543 U.S. at 233, 125 S.Ct. 738).

The *Cunningham* majority would no doubt similarly find the Hawai'i extended term sentencing scheme constitutionally wanting. We are convinced that it would view our sentencing structure, like California's, as failing "to permit judges genuinely 'to exercise broad discretion ... within a statutory range,' which, 'everyone agrees,' encounters no [s]ixth [a]mendment shoal." *Cunningham,* 549 U.S. at ——, 127 S.Ct. at 871 (quoting *Booker,* 543 U.S. at 233, 125 S.Ct. 738) (ellipses in original).[18]

18. In *White,* we concluded that Hawai'i had a range system, "[t]he range inherent in Hawaii's indeterminate sentencing scheme [being] ... between probation and the statutory maximum prison term, but, rather than the sentencing judge setting the specific term that a defendant is to serve, the minimum time served is set by the parole board." 110 Hawai'i at 89, 129 P.3d at 1117. Our conclusion today is not necessarily

2. *In light of the expressly stated legislative intent underlying Act 230, we decline to exercise our inherent judicial power to order, on remand, that a jury be empaneled.*

In *State v. Peralto,* 95 Hawai'i 1, 18 P.3d 203 (2001), this court recognized its inherent judicial power to authorize, upon remand, the empaneling of a jury to serve as the trier of fact in the event that the prosecution sought extended term sentencing of a criminal defendant. In considering whether newly established procedures for extended term sentencing—fashioned during the pendency of the defendants' appeal—should apply to the defendants' own cases, we concluded that

[i]f *[State v.] Young[,* 93 Hawai'i 224, 999 P.2d 230 (2000),] applies retroactively, the Peraltos' enhanced sentences must be vacated and the cases remanded for a new sentencing hearing[3] in which a jury would be instructed according to *Young.*[4]

3. For examples of bifurcated adjudicative and penalty proceedings where the court may empanel a new jury after the appellate court remands the case for a new penalty proceeding, *see, e.g.,* Ala.Code § 13A–5–46(b) (1994), Del. Code Ann. tit. 11 § 4209(g)(4) (1995), Utah Code Ann. § 76–3–207(5)(a) (1999), Wash. Rev.Code Ann. § 10.95.050(4) (West 1990).

4. ... Because the sufficiency of the jury instruction is a procedural error, remand for an HRS § 706–657 hearing is possible in the present case. *We hold that, where a defendant's enhanced sentence under HRS § 706–657 is vacated on appeal based on procedural error, the prosecution may elect to conduct a new HRS § 706–657 hearing or may consent to resentencing without the enhancement. If the HRS § 706–657 issue was originally decided by a jury, a new jury shall be empaneled for the hearing on remand unless the parties agree to waive the jury and conduct the hearing before the court.*

*Peralto,* 95 Hawai'i at 6, 18 P.3d at 208 (emphasis added); *see also id.* at 7, 18 P.3d

irreconcilable with our reasoning in *White* but, insofar as the statutory maximum is clearly now the "standard term" set forth in HRS § 706–656, –659, and –660, *see supra* notes 11, 12, and 13, any upward departure to an extended term sentence would implicate *Cunningham* because the sentence would not be authorized solely by the jury's verdict. *See, e.g., Cunningham,* 549 U.S. at ——, 127 S.Ct. at 865.

at 209 ("Any prejudice that [the defendants] may have suffered can be cured by granting them a new HRS § 706–657 hearing in which the parties and the jury are required to address the *Young* standards.").

A number of foreign jurisdictions similarly recognize that empaneling juries to accommodate *Apprendi* requirements implicates an inherent power of the judiciary. *See Aragon v. Wilkinson ex rel. County of Maricopa*, 209 Ariz. 61, 97 P.3d 886, 891 (Ct.App.2004) ("[A]lthough the statutory sentencing scheme does not currently provide for convening a jury trial during the sentencing phase of a non-capital case, nothing in our rules or statutes prohibits the court from doing so.") (citing *Acker v. CSO Chevira*, 188 Ariz. 252, 934 P.2d 816, 818 (Ct.App.1997) (quoting *State v. Superior Court of Maricopa County*, 39 Ariz. 242, 5 P.2d 192, 194 (1931) ("A court's inherent authority may be defined as such powers as are necessary to the ordinary and efficient exercise of jurisdiction."))); *Galindez v. State*, 955 So.2d 517, 527 (Fla.2007) (Cantero, J., concurring) ("To remedy the violations of *Apprendi* and *Blakely*, we would be entirely justified in adopting a procedure for the empaneling of new juries on resentencing. Nor would we be the first court to do so."); *State v. Schofield*, 895 A.2d 927, 937

(Me.2005) ("Although state law does not specifically provide for a jury trial on sentencing facts, our recognition of such a procedure is well within our inherent judicial power to 'safeguard and protect within the borders of this State the fundamental principles of government vouchsafed to us by the State and Federal Constitutions.' ") (quoting *Morris v. Goss*, 147 Me. 89, 83 A.2d 556, 565 (1951)). *But see State ex. rel. Mason v. Griffin*, 104 Ohio St.3d 279, 819 N.E.2d 644, 647–48 (2004) (concluding that, in light of constitutional reasons unique to Ohio and statutory language similar to Hawaii's requiring the sentencing court, not a jury, to find aggravating factors for an extended sentence, the trial court "patently and unambiguously lacks jurisdiction to hold a jury sentencing hearing" and granting a writ of prohibition).

Nevertheless, in Act 230, the legislature expressed its intent regarding how best to conform our extended term sentencing regime to the requirements of *Apprendi* and its progeny and, in so doing, did not vest in the jury the power to find the requisite aggravating facts but, rather, directed that the sentencing court should retain that responsibility. *See* 2006 Haw. Sess. L. Act 230, §§ 23 and 24 at 1012–13; notes 1 and 2, *supra*.[19]

---

**19.** In the wake of *Blakely*, a number of states reformed their sentencing systems to comport with the *Apprendi* line of cases by assigning the necessary fact-finding responsibilities to a jury. *See, e.g.*, Ariz.Rev.Stat. Ann. § 13–702.01 (2006); Minn. State. Ann. § 244.10 (West 2007); Wash. Rev.Code Ann. § 9.94A.537 (West 2007). Both Minnesota's and Washington's statutes allow for bifurcated trials in cases in which motions for extended term sentencing would implicate evidence that would be prejudicial or otherwise inadmissible during the guilt adjudication phase. *See* Minn. State Ann. § 244.10(5)(c); Wash. Rev. Code Ann. § 9.94A.537(4).

This court has already articulated the manner in which a trial would be conducted in connection with a motion for an extended term sentence based upon facts intrinsic to the offense charged. *See State v. Janto*, 92 Hawai'i 19, 34–35, 986 P.2d 306, 321–22 (1999) (addressing the prosecution's motion for an enhanced sentence pursuant to HRS § 706–657 (1993) for murder "especially heinous and cruel"). *Cunningham*, however, by rejecting the intrinsic/extrinsic distinction, *see* 549 U.S. at —— n. 14, 127 S.Ct. at 869 n. 14, essentially reinstates the rule asserted in *Estrada* for both intrinsic *and extrinsic* facts: "a defendant [must] have 'fair notice of the charges against' him: the aggravating circumstances

must be alleged in the indictment and found by the jury," *Estrada*, 69 Haw. at 229, 738 P.2d at 829 (quoting *State v. Apao*, 59 Haw. 625, 635–36, 586 P.2d 250, 258 (1978)). "[S]uch aggravating circumstances '*must* be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and *support the sentence to be imposed ....*' " *Tafoya*, 91 Hawai'i at 270, 982 P.2d at 899 (quoting *Schroeder II*, 76 Hawai'i at 528, 880 P.2d at 203 (discussing intrinsic aggravating factors) (some emphasis in *Schroeder II* and some added)). It is therefore noteworthy that the indictments against Maugaotega did not allege that, if convicted, he would be subject to extended term sentencing nor allege the facts upon which the prosecution would base its motions for extended terms. *See supra* note 3.

Without deciding the issue, we foresee that, in a reformed extended term sentencing scheme in which the jury is vested with the responsibility of making the requisite findings, notice of the prosecution's intention to seek an extended sentence and the facts requisite to that extended sentence—but irrelevant and potentially prejudicial to the defendant during the guilt phase of the trial—would be included in the indictment but withheld from the jury until the second phase of

We therefore do not believe it to be appropriate for this court to assert its inherent authority to empanel a jury on remand because, as a rule,

> [p]rudential rules of judicial self-governance properly limit the role of the courts in a democratic society. *Cf. Trustees of OHA v. Yamasaki,* 69 Haw. 154, 171, 737 P.2d 446, 456 (1987); *Life of the Land v. Land Use Commission,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981) (citing *Warth v. Seldin,* 422 U.S. 490, 498[, 95 S.Ct. 2197, 45 L.Ed.2d 343] ... (1975)).... [One] such rule is that, "even in the absence of constitutional restrictions, [courts] must still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting, *especially where there may be an intrusion into areas committed to other branches of government." Id.* (emphasis added) (citation omitted)....
>
> ... Although judicial review serves as a check on the unconstitutional exercise of power by the executive and legislative branches of government, "the only check upon [the judicial branch's] exercise of power is [its] own sense of self-restraint." *U.S. v. Butler,* 297 U.S. 1, 78–79[, 56 S.Ct. 312, 80 L.Ed. 477] ... (1936) (Stone, J., dissenting).

*In re Attorney's Fees of Mohr,* 97 Hawai'i 1, 9–10, 32 P.3d 647, 655–56 (2001) (some brackets added and some in original) (some ellipses added and some in original) (emphasis in original). *See also Ross v. Stouffer Hotel Co.,* 76 Hawai'i 454, 467, 879 P.2d 1037, 1050 (1994) (Klein, J., concurring and dissenting)

(" '[T]he [c]ourt's function in the application and interpretation of ... laws must be carefully limited to avoid encroaching on the power of [the legislature] to determine policies and make laws to carry them out.' ") (quoting *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 256–57, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) (Black, J., dissenting)); *Bremner v. City & County of Honolulu,* 96 Hawai'i 134, 139, 28 P.3d 350, 355 (App.2001) (quoting *Life of the Land,* 63 Haw. at 171–72, 623 P.2d at 438).[20]

We are not alone in exercising such self-restraint. *See State v. Brown,* 209 Ariz. 200, 99 P.3d 15, 18–19 (2004) (declining to prescribe a solution for aspects of Arizona's extended term sentencing scheme that violated *Apprendi,* in part to allow the legislature the opportunity to address the issue); *State v. Shattuck,* 704 N.W.2d 131, 148 (Minn.2005) (concluding that the court "has the authority to establish procedures to apply the requirements of *Apprendi* and *Blakely* to sentencing," but declining to impose a jury solution because "[i]t is the legislature that created the [s]entencing ... system and retains authority over its development. For us to engraft sentencing-jury or bifurcated-trial requirements onto the ... sentencing statutes would require rewriting them, something our severance jurisprudence does not permit."); *State v. Dilts,* 337 Or. 645, 103 P.3d 95, 100–01 (2004) (declining to address the issue of empaneling a jury upon remand in order to allow the parties to develop arguments at the new sentencing hearing); *State v. Provost,* 179 Vt. 337, 896 A.2d 55, 66–67 (2005) ("de-

---

the trial, during which the motion for extended term sentencing would be considered. In that manner, both the defendant's due process right to notice of the potential sentence to be imposed *and* the right to a fair trial on the charged offense before an impartial jury would be preserved. *But see State v. Chauvin,* 723 N.W.2d 20, 29–30 (Minn.2006) (defendant's *Apprendi* rights and right to due process were not violated by the prosecution's failure to include aggravating circumstances in the complaint, particularly in light of the fact that, three weeks prior to trial, the prosecution provided the defendant separate notice of its intention to seek an extended term sentence and notice of the facts upon which it would rely in seeking the sentence).

**20.** Subsequent action by the legislature during its 2007 session bolsters our conclusion. House Bill

No. 1152, introduced on January 24, 2007, sought to amend HRS §§ 706–662 and –664 to assign to the jury the role of making the findings requisite for the imposition of an extended term of imprisonment. *See* H.B. 1152, 24th Leg., Reg. Sess. (2007), *available at* http://capitol.hawaii. gov/sessioncurrent/bills/HB1152_SD2_.htm; Haw. State Leg. Bill Status for H.B. No. 1152, *available at* http://capitol.hawaii.gov/site1/docs/ getstatus2.asp?billno=HB1152. On August 27, 2007, following House disagreements with Senate amendments to the bill, the measure was delayed until the 2008 legislative session. *See* Haw. State Leg. Bill Status for H.B. No. 1152, *available at* h ttp://capitol.hawaii.gov/site1/docs/getstatus2.asp?billno=HB1152.

clin[ing] to follow the example of those courts that have created their own sentencing procedures to replace legislative schemes held unconstitutional in the wake of *Apprendi* and *Blakely* "); *State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192, 208 (2005), *abrogated on other grounds by Recuenco*, 126 S.Ct. at 2553, (noting that the relevant extended sentencing statute "does not include any provision allowing a jury to make [the required findings] during trial, during a separate sentencing phase, or on remand" and concluding that "[t]o allow exceptional sentences here, we would need to imply a procedure by which to empanel juries on remand to find the necessary facts, which would be contrary to the explicit language of the statute.").[21] *But see Smylie*, 823 N.E.2d at 685–86, 691 (remanding to allow the prosecution "to prove adequate aggravating circumstances before a jury or accept the statutory fixed term").

## III. *CONCLUSION*

In light of the foregoing, we vacate the May 17 and 18, 2004 judgments and sentences of the circuit court and remand this matter to the circuit court for resentencing consistent with this opinion.

Concurring and Dissenting Opinion by ACOBA, J., with whom DUFFY, J., Joins.

I concur in the vacation of the sentences and judgments entered by the Circuit Court of the First Circuit (the court) on May 17, 2004 and May 18, 2004 against Defendant–Appellant Miti Maugaotega, Jr. (Appellant). My concurrence is based upon (1) the February 20, 2007 mandate of the United States Supreme Court, *Maugaotega v. Hawaii*, —— U.S. ——, 127 S.Ct. 1210, 167 L.Ed.2d 37 (2007) [hereinafter *Maugaotega v. Hawaii*], (in response to the October 27, 2005 petition

for writ of certiorari filed with the Court by Appellant) requiring, in view of *Cunningham v. California*, 549 U.S. ——, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), that this court reconsider the validity of the Hawai'i extended term sentencing scheme as applied to Appellant by the majority in *State v. Maugaotega*, 107 Hawai'i 399, 114 P.3d 905 (2005) [hereinafter *Maugaotega* ]; (2) the dissenting opinion's disagreement with the majority in *Maugaotega* to a similar effect; and (3) the separate opinions in other appeals brought before and after this case, stating that Hawaii's sentencing scheme violated the Sixth Amendment right to a jury trial as set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

However, contrary to the majority's position, I would vacate the sentences and the judgments thereon and remand for a jury trial, unless waived by Appellant, on the motion for extended terms filed by Plaintiff–Appellee State of Hawai'i (the prosecution). This disposition on remand is required because (1) Hawai'i Revised Statutes (HRS) §§ 706–661 and –662, the extended term sentencing statutes, are not rendered unconstitutional in their entirety under *Cunningham*,[1] (2) the legislature expressly intended to preserve extended term sentencing, (3) such a disposition is approved by *Cunningham*, and (4) the facts of this appeal warrant it.

### I.

### A.

In his opening brief Appellant specifically "challenge[d the court's] ruling granting all of [the prosecution's] motions for extended terms of imprisonment based on plain error

---

**21.** The second remedy sanctioned by the *Cunningham* majority—*i.e.,* the creation of a true sentencing range which "permit[s] judges genuinely 'to exercise broad discretion ... within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal," 549 U.S. at ——, 127 S.Ct. at 871 (quoting *Booker*, 543 U.S. at 233, 125 S.Ct. 738) (footnote omitted)—would require us to rewrite HRS ch. 706 in such a way as to transform it from an indeterminate to a determinate sentencing scheme. Such whole-

sale reform, and the assessment of its wisdom, is clearly best left to the legislature.

**1.** For the sake of convenience, the analysis related to the amendments to HRS §§ 706–661 and –662 (Supp.2006) that expired on June 30, 2007, would apply to the versions of HRS §§ 706–661 and –662 that existed at the time of Appellant's sentencing and were reenacted on June 30, 2007.

and the ruling in [*Apprendi* ]." Presciently, Appellant argued that "[the court] . . . could not have 'extended' [Appellant's] maximum terms of imprisonment solely on the basis of the facts that the jury found at trial in Cr. No. 03–1–1897, or solely on the basis of the facts on the record of his 'no contest' pleas in all the remaining cases." He maintained that "the judge had to make additional findings in order to impose the extended sentences under HRS § 706–662." Thus, according to Appellant, in imposing "maximum terms of imprisonment because it was 'necessary for protection of the public' under HRS § 706–662(4), the judge exceeded his authority and violated the *Apprendi* rule, by 'inflict[ing] punishment that the jury's verdict alone does not allow.' " (Quoting *Blakely*, 542 U.S. at 304, 124 S.Ct. 2531.)

Faced with this court's precedent in *State v. Kaua*, 102 Hawai'i 1, 72 P.3d 473 (2003), Appellant asserted that "[t]he *Kaua* court erroneously construed *Apprendi* as applying to 'elemental' or 'intrinsic' facts only, when the *Apprendi* rule clearly applies to '*any* fact' that increases the penalty for a crime beyond the prescribed statutory maximum, which includes 'extrinsic' facts also." (Quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.) (Emphasis supplied.) Appellant pointed out that "[t]he distinction between 'intrinsic' and 'extrinsic' facts which Hawai'i precedents rely upon to exempt HRS § 706–662 from the *Apprendi* rule, is a distinction that the U.S. Supreme Court specifically rejected." In sum, as Appellant stated, "[b]ecause the 'extrinsic' factual finding that [Appellant] was a 'multiple offender' whose imprisonment was 'necessary for the protection of the public' under HRS § 706–662(4), had the *effect* of enhancing [Appellant's] sentence, the *Apprendi* rule was violated because this fact was not submitted to a jury [and] proved beyond a reasonable doubt." (Emphasis supplied.) Appellant noted that, in *Blakely*, the U.S. Supreme Court "reaffirm[ed] its commitment to the *Apprendi* rule[.]"

Subsequently, this court issued its decision in *State v. Rivera*, 106 Hawai'i 146, 102 P.3d 1044 (2004). In his reply brief, Appellant requested that the majority reconsider its decision in *Rivera*, because contrary to the majority's decision, "nowhere in . . . *Blakely* . . . does the United States Supreme Court limit the *Blakely/Apprendi* rule to determinate sentencing schemes only[,]" and the " 'intrinsic-extrinsic' analysis in *Kaua* . . . is *not* compatible with the *Blakely/Apprendi* rule." (Citing *Rivera*, 106 Hawai'i at 172, 102 P.3d at 1070.) (Acoba, J., dissenting, joined by Duffy, J.).

### B.

In previously affirming the extended sentences in the instant case, the majority in *Maugaotega* stated that, based on *Kaua* and *Rivera*, "Hawaii's extended term sentencing scheme does not run afoul of *Apprendi*, [and] disposes of [Appellant's] point of error on appeal[,]" 107 Hawai'i at 402, 114 P.3d at 908, and concluded that these cases were "not at odds with" "*United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), . . . holding that federal sentencing guidelines are subject to the jury trial requirements . . ., and severing provisions making the guidelines mandatory[,]" 107 Hawai'i at 402, 114 P.3d at 908. In contrast, the dissent in *Maugaotega* stated in relevant part that, "[b]ased on the dissent in *Rivera*, . . . the extended terms of imprisonment [should be vacated] and [the case] remand[ed] for resentencing in conformance with *Apprendi*." *Id.* at 411, 114 P.3d at 917 (Acoba, J., dissenting, joined by Duffy, J.).

As noted before, subsequently, on January 22, 2007, the United States Supreme Court decided *Cunningham*. In its February 20, 2007 mandate, the Court ordered that "[t]he judgment [in *Maugaotega* ] is vacated and [the] case [is] remanded to the Supreme Court of Hawaii, for further consideration in light of [*Cunningham* ]." *Maugaotega v. Hawaii*, —— U.S. at ——, 127 S.Ct. at 1210.

### II.

### A.

The prior dissents in *Rivera* and *State v. White*, 110 Hawai'i 79, 129 P.3d 1107 (2006), and as referred to in related appeals, *see infra*, including *Maugaotega*, are consistent with *Cunningham*. The fundamental propo-

sition emphasized in the separate opinions as derived from *Apprendi* and *Blakely* was that "the United States Constitution's Sixth Amendment right to a jury trial mandates that 'other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt,'" *Rivera*, 106 Hawai'i at 166, 102 P.3d at 1064 (Acoba, J., dissenting, joined by Duffy, J.) (quoting *Blakely*, 542 U.S. at 301, 124 S.Ct. 2531 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348)) (internal quotation marks and brackets omitted), and that the determination of extended term sentences by a judge did indeed increase such a penalty in disregard of a defendant's right to a jury trial.

The United States Supreme Court reiterated this determination in *Cunningham*, 549 U.S. at ——, 127 S.Ct. at 863–64, stating that "[t]his Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence [beyond the prescribed statutory maximum] must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by the preponderance of the evidence." Hence, "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." *Rivera*, 106 Hawai'i at 170, 102 P.3d at 1068 (Acoba, J., dissenting, joined by Duffy, J.) (quoting *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531 (internal quotation marks and citation omitted)); *accord Cunningham*, 549 U.S. at ——, 127 S.Ct. at 865. Consequently, the proposition repeated in *Cunningham* and stated in the *Rivera* dissent that the prescribed "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant[,]" applies. *Id.* (emphasis omitted) (quoting *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531). Thus, "the 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he [or she] may impose without additional findings." *Id.* (ellipses and

emphasis omitted) (quoting *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531).

Similar to *Rivera*, in Appellant's case, "it is the findings of the court, based on facts and factors not submitted to the jury, that result[s] in a prison term beyond that simply attributable to the guilty verdict." *Rivera*, 106 Hawai'i at 172, 102 P.3d at 1070 (Acoba, J., dissenting, joined by Duffy, J.). Consequently, as related in the *Rivera* dissent, "Hawaii's extended term proceeding … would be a proceeding subject to the right to jury trial under the Sixth Amendment," *id.*, and the absence of a jury trial or wavier thereof by Appellant requires vacation of the sentences imposed. Therefore, despite the majority's rationalization of the "extrinsic-intrinsic" test in *Kaua* and its embracement of the *Cunningham* dissents, the dispute has been put to rest by the majority opinion in *Cunningham*.

### B.

Accordingly, Appellant's extended sentence must be vacated and the case remanded for resentencing in conformance with *Cunningham* and *Apprendi*, because Appellant's sentence was based on facts not submitted to a jury. *See Rivera*, 106 Hawai'i at 172, 102 P.3d at 1070 (Acoba, J., dissenting, joined by Duffy, J.) (stating that the extended sentence imposed on the defendant violated the Sixth Amendment where "[i]t [was] the findings of the *court*, based on the facts and factors not submitted to the jury, that resulted in a prison term beyond that simply attributable to the guilty verdict" (emphasis in original)); *Maugaotega*, 107 Hawai'i at 411, 114 P.3d at 917 (Acoba, J., dissenting, joined by Duffy, J.) (stating that the Appellant's "extended terms of imprisonment" should be "vacate[d] and remand[ed]" for resentencing in conformance with [*Apprendi* ] ), *vacated, Maugaotega v. Hawai'i*, —— U.S. at ——, 127 S.Ct. at 1210 ("The motion of petitioner for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted. The judgment is vacated and the case [is] remanded to the Supreme Court of Hawai'i for further consideration in light of [*Cunningham*.] ).

These precepts were previously confirmed in this jurisdiction in the separate opinions in *White*, 110 Hawai'i at 97, 129 P.3d at 1125 (Acoba, J., dissenting, joined by Duffy, J.) (stating that "a determination that the defendant's 'criminal actions were so extensive' that an extended sentence for the protection of the public is warranted is a fact that must be determined by a jury"); *see also State v. Laysa*, No. 27735, 2007 Haw. LEXIS 21, at *1–2 (Haw. Jan. 19, 2007) (order denying application for certiorari) (Acoba, J., dissenting, joined by Duffy, J.) (stating that "there is more than sufficient 'compelling justification' . . ., *State v. Garcia*, 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001) (emphasis omitted), to overrule the holding in [*Kaua*][, 102 Hawai'i 1, 72 P.3d 473] (citing *Rivera*, [106 Hawai'i 146, 102 P.3d 1044], *Maugaotega*, [*supra*], and *White*, [*supra*], and that *it is imperative to reexamine the extended-term sentencing decisions*" (citations omitted) (emphasis added)); *State v. Keck*, No. 27311, 2006 Haw. LEXIS 660, at *1 (Haw. Oct. 4, 2006) (order denying application for certiorari) (Acoba, J., concurring and dissenting, joined by Duffy, J.) (concurring in part, but dissenting as to the "extended term sentences issue" where the defendant was sentenced to extended terms of imprisonment); *State v. Johnson*, No. 27027, 2006 WL 1166141, at *1 (Haw. May 3, 2006) (unpublished disposition) (Duffy, J., dissenting, joined by Acoba, J.) (stating that the extended term sentences should be vacated and the case remanded for resentencing based on the dissents in *Rivera* and *White*); *State v. Lanosa*, No. 25633, 2006 WL 574456, at *3 (Haw. Mar. 10, 2006 (unpublished disposition) (Duffy, J., dissenting, joined by Acoba, J.) (stating that the majority's opinion conflicted with the Ninth Circuit Court of Appeals decision in *Kaua v. Frank*, 436 F.3d 1057 (9th Cir.2006), *affirming Kaua v. Frank*, 350 F.Supp.2d 848 (2004) [hereinafter *Kaua I* ], because the Sixth Amendment requires a jury to make a finding that would "expose the defendant to a greater punishment than that authorized by the jury's guilty verdict" (citation omitted)); *State v. Brown*, No. 26911, 2005 WL 2338855, at *2 (Haw. Sept.26, 2005) (unpublished disposition) (Acoba, J., concurring and dissenting, joined by Duffy, J.) (concurring with the order affirming the trial court's judgment "except with respect to the procedure employed as to the imposition of an extended term sentence" based on the dissent in *Rivera*); *State v. Domingo*, No. 26458, 2005 WL 1400395, at *2 (Haw. June 14, 2005) (unpublished disposition) (Duffy, J., concurring and dissenting, joined by Acoba, J.) (concurring with the majority except with regard to the sentence imposed, based on the dissent in *Rivera*); *State v. D'Argibaud*, No. 26087, 2005 Haw. LEXIS 205, at *1 (Haw. Apr. 18, 2005) (order denying application for certiorari (Acoba, J., dissenting, joined by Duffy, J.) (dissenting on the basis that defendant's extended term of imprisonment violated *Apprendi* and its progeny, as stated in the dissent in *Rivera*); *State v. Akana*, No. 25647, 2005 WL 504052, at *2 (Haw. Mar.4, 2005) (unpublished disposition) (Acoba, J., concurring and dissenting, joined by Duffy, J.) (concurring in the order affirming the trial court's judgment "except with respect to the procedure employed as to the imposition of an extended term sentence[,]" based on the dissent in *Rivera*); *State v. Gomes*, 107 Hawai'i 308, 314, 113 P.3d 184, 190 (2005) (Acoba, J., concurring, joined by Duffy, J.) (concurring but "continu[ing] to adhere to the position taken . . . [by the] dissent in [*Rivera* ]"); *see* Jeannie Choi, Comment, *State v. Rivera: Extended Sentencing and the Sixth Amendment Right to Trial by Jury in Hawai'i*, 28 U. Haw. L.Rev. 457, 457, 484 (2006) (arguing "that Hawaii's extended sentencing scheme fails constitutional muster and that a remedy is timely" because "the Hawai'i Supreme Court [majority] attempted to reconcile [Hawaii's] extended sentencing scheme with the Sixth Amendment right to trial by jury through linguistic manipulation of a fact as 'intrinsic' or 'extrinsic' where no substantial distinction in effect upon the statutory maximum exists").

### III.

Appellant requests that this court "vacate the sentences in all cases, Cr. No. 03–1–1897, Cr. No. 03–1–2727, Cr. No. 03–1–2726, Cr. No. 03–1–2725, [and] Cr. No. 03–1–2724, reverse the circuit court's orders granting the [prosecution's] motions for extended

term sentencing, and remand the cases for resentencing." In *Cunningham,* the Court explained the ways that an extended term sentence could be imposed in an *Apprendi* compliant sentencing system:

> As to the adjustment of California's sentencing system in light of our decision, "[t]he ball ... lies in [California's] court." *Booker,* 543 U.S., at 265, 125 S.Ct. 738[.] We note that several States have modified their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing. *They have done so by calling upon the jury-either at trial or in a separate sentencing proceeding-to find any fact necessary to the imposition of an elevated sentence.* As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements.... *Other States have chosen to permit judges genuinely "to exercise broad discretion ... within a statutory range," which, "everyone agrees," encounters no Sixth Amendment shoal.* Booker, 543 U.S. at 233, 125 S.Ct. 738. California may follow the paths taken by its sister States or otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court's decisions.

*Cunningham,* 549 U.S. at ——, 127 S.Ct. at 871 (emphases added) (footnote omitted) (some brackets in original and some added and some ellipses in original and some added).

Thus, *Cunningham* essentially outlines two possibilities: (1) follow the present system but modify it to require that a jury find any aggravating factors or (2) allow judges to exercise broad discretion, by creating a system in which there is no "fixed term" which would allow judges to impose sentences without a jury. *See Smylie v. State,* 823 N.E.2d 679, 685 (Ind.2005) (explaining that "[a] constitutional scheme akin to ours could take one of two forms"). Fundamental to any method, is that "the State observes Sixth Amendment limitations declared in this Court's decisions." *Cunningham,* 549 U.S. at ——, 127 S.Ct. at 871.

However, on remand, the majority concludes that the entire extended term statute is unconstitutional and forecloses both of the *Cunningham* possibilities posed. As to *Cunningham* option (1), the majority states that, "in light of the expressly stated legislative intent underlying Act 230, we decline to exercise our inherent judicial power to order, on remand, that a jury be empaneled[,]" majority opinion at 448, 168 P.3d at 578, and as to option (2), "[t]he second remedy sanctioned by the *Cunningham* majority," allowing judges to exercise broad discretion "would require us to rewrite HRS ch. 706 in such a way as to transform it from an indeterminate to a determinate sentencing scheme[,]" majority opinion at 451, 168 P.3d at 581 n. 21. Accordingly, in asserting that "the task of conforming the extended term sentencing statutes to *Cunningham* lies with the legislature[,]" majority opinion at 447, 168 P.3d at 577 (some capitalization omitted), the majority precludes imposition of any extended sentence unless and until the legislature acts. Manifestly, such an outcome is not compelled by our own precedent or *Cunningham.*

## IV.

HRS §§ 706–661 and –662 are not unconstitutional in their entirety based on this court's own jurisprudence, other jurisdictions applying *Apprendi* and its progeny, and *Apprendi's* bright-line rule, reiterated in *Cunningham,* regarding extended sentencing. Initially, the majority's holding that HRS § 706–662 is unconstitutional on its face, majority opinion at 447, 168 P.3d at 577, is inconsistent with this court's determination that allowing "the court" to make findings for enhancing sentences such as that required by HRS § 706–657 (1993) was unconstitutional, but *did not* render the entire statute void because in such a statutory scheme a jury could be substituted for a judge. *See State v. Peralto,* 95 Hawai'i 1, 18 P.3d 203 (2001), *State v. Young,* 93 Hawai'i 224, 999 P.2d 230 (2000), and *State v. Janto,* 92 Hawai'i 19, 986 P.2d 306 (1999), and discussion, *infra; cf. Janto,* 92 Hawai'i at 34, 986 P.2d at 320 (finding the statute allowing "the court" to make findings unconstitutional "[b]ecause the requirement that the jury find the facts necessary for imposition of a particular punish-

ment is rooted in the Hawai'i constitution's guarantee of right to jury trial").

In *Janto, Young,* and *Peralto,* this court concluded that in order to apply HRS § 706–657 constitutionally, a jury, instead of the court as the statute dictated, had to make the necessary findings for enhanced sentencing and so ordered. *See infra.* It is inconsistent with the foregoing cases for the majority to void the entire extended sentencing regime, simply because the statute's prescription that "the court" make the findings is invalid, when the case may be readily remanded for a jury, instead, to render such a determination. The majority's contradictory position thus flies in the face of our own precedent.

Second, it is not necessary to nullify the entire statute where some portions of the extended term sentencing statute may be constitutionally applied. Other jurisdictions facing similar issues, in light of *Apprendi, Blakely,* and *Cunningham,* have also upheld the constitutional portions of their respective extended term sentencing regimes. *See State v. Shattuck,* 704 N.W.2d 131, 143 n. 11 (Minn.2005) (holding that portions of the sentencing scheme were unconstitutional as applied because "[t]he traditional rule is that a law is facially unconstitutional only if it is unconstitutional in all of its applications" (citing *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (to succeed in facial challenge, challenger "must establish that no set of circumstances exists under which the Act would be valid"))); *State v. Dilts,* 337 Or. 645, 103 P.3d 95, 99–100 (2004) ("This court has held that, when part or parts of a statute are held unconstitutional, the whole statute need not be invalidated if the part or parts that are constitutionally impermissible are severable from the remainder of the statute" and "the fact that the sentencing guidelines may be applied unconstitutionally, as they were in this case, does not mean that we must reject the sentencing guidelines themselves as unconstitutional" (citation omitted)); *Smylie,* 823 N.E.2d at 685 ("The foregoing conclusion about the unconstitutionality of Indiana's present sentencing system hardly nullifies the entire arrangement. We have historically rescued constitutional portions of statutes, if possible,

when other portions are held unconstitutional." (Citation omitted.)). As noted, this statute may be applied constitutionally if a jury makes the necessary findings for imposing extended term sentences. The majority, however, simply chooses to circumvent the application of *Cunningham* in this case.

Further, in declaring the statute unconstitutional in its entirety, the majority precludes application of portions of the statute obviously allowable by *Cunningham. Apprendi* dictated the bright line rule reiterated in *Cunningham* that "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, *other than a prior conviction,* not found by a jury or admitted by the defendant." *Cunningham,* 549 U.S. at ——, 127 S.Ct. at 860 (citing *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348) (emphasis added) (citations omitted).

The majority's holding would eliminate the sentencing court's ability to impose extended term sentencing, even in the *Apprendi*-approved situation of prior convictions. *See* HRS § 706–662(1) (Supp.2006) (allowing for extended term sentencing where "[t]he defendant is a persistent offender in that the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older"); *see also Shattuck,* 704 N.W.2d at 143 n. 10 (concluding that "Appellant has not demonstrated that Minn. Sent. Guidelines II.D is unconstitutional in all of its applications, because a section not before us today, which provides for imposition of an upward departure based on the fact of a prior conviction, could be determined to be constitutional"). Such a result is plainly contrary to *Apprendi, Blakely,* and *Cunningham.*

## V.

Accordingly, I disagree with the majority that *Cunningham* option (1) is not possible or appropriate for we have, in similar instances, "call[ed] upon the jury—either at trial or in a separate sentencing proceeding—to find any fact necessary to the imposi-

tion of an elevated sentence." *Cunningham*, 549 U.S. at ——, 127 S.Ct. at 871.[2]

In eschewing option one, the majority states that "in Act 230, the legislature expressed its intent regarding how best to conform our extended term sentencing regime to the requirements of *Apprendi* and its progeny and, in so doing, did not vest in the jury the power to find the requisite aggravating facts but, rather, directed that the sentencing court should retain that responsibility." Majority opinion at 449, 168 P.3d at 579 (citations omitted). Act 230 was the result of a review by the Committee to Conduct a Comprehensive Review of the Hawai'i Penal Code (the Committee) that specifically addressed Hawaii's extended sentencing provisions in an effort to avoid the *Apprendi* jury trial requirement.

Amendments to HRS §§ 706–661 and –662 were proposed by the Committee in response to *Kaua I*, 350 F.Supp.2d at 860, which found that Hawaii's extended term sentencing scheme was unconstitutional. According to the Committee, the specific concern was that the decision created "*a clear danger that sentences imposed pursuant to Hawaii's current extended term sentencing scheme will be subject to invalidation by the federal courts.*" Report of the Committee to Conduct a Comprehensive Review of the Hawai'i Penal Code at 27m (2005) [hereinafter *Penal Code Review* ] (emphasis added). The Committee stated that "the proposed amendments remove[d] the need to protect the public as a finding the court must make before a defendant is eligible for an extended term sentence. Rather, a defendant who ha[d] been convicted of a felony and me[t] the criteria for any of the modified section 706–662 categories, [was] *exposed, without more, to the maximum extended term sentence.*" *Id.* at 27n (emphasis added). Thus, "[t]he proposed amendments [were] aimed at strengthening our extended term sentencing scheme against constitutional attack in this evolving area of law." *Id.* at 27m.

Consequently, while the majority posits that the legislature, in attempting to conform

our extended term sentencing scheme to *Apprendi*, vested authority in the sentencing court to find the requisite aggravating facts, it ignores the legislature's overarching concern that led to the aborted amendment of the extended term sentencing structure: that extended term sentencing continue to be available. In light of *Cunningham*, the legislature's designation of the sentencing court as the fact finder for extended term sentencing is invalid. Nevertheless, the extended term sentencing procedure may still be enforced under the first option—calling upon the jury to find necessary facts—approved by the Supreme Court, and should be adopted in view of the legislature's desire to preserve extended term sentencing.

## VI.

In that regard, article VI, section 1 of the Hawai'i Constitution vests the "judicial power of the State" in the courts. This court has stated that "the inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy has been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists." *State v. Moriwake,* 65 Haw. 47, 55, 647 P.2d 705, 712 (1982) (citations and internal quotation marks omitted).

Furthermore, the inherent power of the circuit courts is confirmed by HRS § 603–21.9(6) (1993), which states that "[t]he several circuit courts shall have the power ... [to] do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice matters pending before them." Additionally, the circuit courts have included within this inherent power, the power to control the litigation process before them and to "create a remedy for a wrong even in the absence of specific statutory remedies[.]" *State v. Harrison,* 95 Hawai'i 28, 32, 18 P.3d 890, 894 (2001) (citations omitted).

**2.** I do agree that the second option is foreclosed because we cannot do the job of the legislature and "transform [our sentencing system] from an indeterminate to a determinate sentencing scheme." Majority opinion at 451, 168 P.3d at 581 n. 21..

## A.

Pertinent to this case, this court has established a circuit court's inherent power to empanel a jury, where constitutionally necessary. In *Janto,* the statute at issue, HRS § 706–657, provides that *"[t]he court* may sentence a person who has been convicted of murder in the second degree to life imprisonment without possibility of parole under section 706–656 *if the court finds that the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity* [.]" (Emphases added.) The trial court had concluded that after "[t]he jury found Janto guilty of murder in the second degree on January 26, 1998 ...[,] the prosecution filed a motion for enhanced sentence pursuant to [HRS] § 706–657" but "in this situation the court would have to submit this issue to the jury because it depends on something that is intrinsic within the case as opposed to extrinsic" or "[i]n other words, because the nature of the sentence involved [it] ... would be something before the trier of fact. In this case I [ (the court) ] was not the trier of fact." 92 Hawai'i at 26, 986 P.2d at 313.

*Janto* recognized that "[i]f a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gate keeping[.]" *Id.* at 34, 986 P.2d at 321. This court thus affirmed the trial court, holding that "a finding leading to an enhanced sentence pursuant to HRS § 706–657 must be made by the trier of fact[,]" *id.* at 32–33, 986 P.2d at 319–320, *i.e., the jury.*

Hence, although HRS § 706–657 instructed that "the court" make the findings necessary to impose an enhanced sentence, *Janto* explained that "the requirement that the jury find the facts necessary for imposition of a particular punishment is rooted in the Hawai'i constitution's guarantee of right to jury trial, [and] the prosecution's argument that adequate notice was given to Janto by the procedures explicated in HRS § 706–657[was] unpersuasive." *Id.* at 34, 986 P.2d at 321.

This court also noted the possible "procedural difficulties in requiring the jury simultaneously to determine guilt and make a finding that the murder was 'especially heinous, atrocious, or cruel,' " and, based on such concerns, adopted the solution of a bifurcated proceeding. *Id.* In such a proceeding, after a jury returns a guilty verdict, an evidentiary hearing must be held and the jury must make a determination as to whether the murder was "especially heinous, atrocious, or cruel" rather than a judge. *Id.* at 34–35, 986 P.2d at 321–22. Thus, a procedure similar to that deemed necessary in *Janto* manifestly applies to the imposition of extended term sentences in light of *Cunningham's* approval of "calling upon the jury" "to find any fact necessary to the imposition of an elevated sentence" "in a separate sentencing proceeding." 549 U.S. at ——, 127 S.Ct. at 859 (citation omitted).

Further, in *Peralto,* this court exercised its inherent power to order a jury empaneled on resentencing in a case involving an extended term sentencing appeal. Like *Janto, Peralto* also involved HRS § 706–657, which referred to "[t]he *court* " sentencing a person to life imprisonment without the possibility of parole if it found "the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity." *Peralto,* 95 Hawai'i at 5, 18 P.3d at 207 (quoting HRS § 706–657) (emphasis added). *Peralto* retroactively applied *Young.*

*Young* required that "[t]he prosecution must prove and the jury must unanimously find, beyond a reasonable doubt, that the defendant intentionally or knowingly inflicted unnecessary torture on the victim and that the victim suffered unnecessary torture." *Id.* (citing *Young,* 93 Hawai'i at 236, 999 P.2d at 241). Because the jury had not been specifically instructed as to the *Young* test and, thus, had not made the necessary findings to impose an enhanced sentence, *this court exercised its inherent power and remanded the case, instructing that a new jury be empaneled to make the necessary findings to determine whether enhanced sentencing was appropriate. Id.* at 6, 18 P.3d at 208.

Again, it must be noted that this court required a jury finding in *Janto, Young,* and *Peralto,* despite the express language in

HRS § 706–657 designating "the court" as authorized to enhance a defendant's sentence "if the court" makes the finding that the "the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity." Thus, in the foregoing cases, the fact that the legislature had explicitly directed that such determinations were to be made by the judge rather than the jury did not persuade or preclude this court from requiring that fact-finding that would have been done by the court was nevertheless to be assigned to the jury.

This court plainly held that where a jury did not make specific findings on the aggravated circumstances necessary for enhanced sentencing, a new jury must to be empaneled to make such decisions rather than a judge, and exercised its inherent judicial power in establishing such a procedure. Obviously, the same rationale applies here because in order to preserve the constitutionality of our extended sentencing scheme, the jury, rather then the court, must make the necessary findings regarding aggravated circumstances.

### B.

*Peralto* also concluded that "[b]ecause the sufficiency of the jury instruction [was] a procedural error, remand for a HRS § 706–657 hearing [was] possible in [that] case" inasmuch as "where a defendant's enhanced sentence under HRS § 706–657 is vacated on appeal based on a procedural error, the prosecution may elect to conduct a new HRS § 706–657 hearing or may consent to resentencing without the enhancement. If the HRS § 706–657 issue was originally decided by a jury, a new jury shall be empaneled for the hearing on remand *unless the parties agree to waive the jury and conduct the hearing before the court.*" 95 Hawai'i at 6 n. 4, 18 P.3d at 208 n. 4 (emphasis added).

Analogously, in the instant case the imposition of an extended term sentence based on unconstitutional judicial fact-finding would amount to a procedural error. Therefore, based on established precedent, the same procedure outlined by *Peralto* applies in Appellant's situation. Indeed, the argument for use of the judiciary's inherent power is even stronger here where, without such a procedure, there will be no extended term sentencing until the legislature acts.

### VII.

Other jurisdictions have exercised this inherent power emphasizing the overriding intent of the legislature to retain enhanced sentences in the appropriate cases.[3] For

---

**3.** In support of its decision to invalidate the extended term sentencing scheme, the majority relies on several cases. The Arizona Supreme Court, in *State v. Brown,* 209 Ariz. 200, 99 P.3d 15, 18–19 (2004), did not, as the majority suggests, exercise restraint and choose not to act in the face of *Apprendi.* Instead, the court stated that "[g]iven the procedural posture in which this case arrived in this [c]ourt[,]" although there were many "additional issues [that] deserve serious consideration, almost none have been directly addressed by the trial judge and none were raised in or decided by the court of appeals" and, as such, it was "unwilling, even in this important area of the law, to consider these issues as an initial matter in the context of this special action." *Id.* at 18.

Similarly in *Dilts,* the Oregon Supreme Court did not take a position on the trial court's implementation of either of the *Cunningham* options, but left the door open for both. That court stated that "our holding simply requires Oregon courts to apply the guidelines in a way that respects the Sixth Amendment[,]" and concluded that "[o]ur discussion above makes clear that a sentence within the guidelines' presumptive range would be constitutional" but explained that it would "not speculate as to the specific positions that the parties may take before the trial court respecting that court's authority in the resentencing proceedings" because "[i]t is inappropriate to address statutory issues, as well as more fundamental state and federal constitutional issues, relating, *inter alia,* to indictment, notice and jury trial until they have been raised before and decided by the trial court." *Dilts,* 103 P.3d at 96, 101.

In *Shattuck,* 704 N.W.2d at 148 n. 17, the Minnesota Supreme Court observed that "the legislature ha[d] recently enacted significant new requirements for aggravated sentencing departures, including sentencing juries and bifurcated trials, and that th[o]se changes appl[ied] both prospectively and to resentencing hearings" and, as such, it "express[ed] no opinion about these recent changes, and d[id] not foreclose the district court from considering any constitutionally applicable and/or available laws on remand." Further, subsequent to that decision, the Minnesota courts have found error where the trial court failed to exercise its inherent power to empanel a jury to avoid any *Apprendi* problem. *See State v. Boehl,* 726 N.W.2d 831, 842 (Minn. Ct.App.2007) (holding that "[t]he district court

example, the Indiana Supreme Court, acknowledging the two possibilities later outlined in *Cunningham*, determined that the approach most "faithful to the large objectives of the General Assembly" would be to *maintain the "present arrangement of fixed terms modified to require jury findings on facts in aggravation[.]" Smylie,* 823 N.E.2d at 685, 686 (emphasis added). This reasoning is echoed by *State v. Chauvin,* 723 N.W.2d 20, 24 (Minn.2006), which, as noted above, concluded that "[w]ithout a constitutional mechanism for imposing an upward sentencing departure and without legislative guidance on how to proceed, empaneling a sentencing jury was necessary (1) to carry out the legislative sentencing scheme to the extent that it contemplated that the district court would impose upward departures where such departures were more appropriate, reasonable, or equitable than the presumptive sentence" and "(2) to vindicate Chauvin's Sixth Amendment right to a jury determination of aggravating sentencing factors." *Chauvin* explained that "[i]t could completely ignore the legislative scheme for departing from the presumptive guideline sentence" or *"it could do the least amount of damage to the statutory scheme by retaining the departure mechanism while at the same time complying with Blakely by using a sentencing jury." Id.* at 25 (emphasis added).

*Chauvin* reasoned that, "[f]aced with this conflict, we agree that it was practically necessary for the district court to improvise a

possessed the inherent judicial authority to [e]mpanel a resentencing jury on remand from ... reversal of [the] respondent's enhanced sentence" and "[b]ecause the district court erred by failing to recognize that it possessed this inherent judicial authority, [*Boehl*] reverse[d] and remand[ed] for the district court's discretionary determination of whether to exercise that authority").

In *State v. Provost,* 179 Vt. 337, 896 A.2d 55, 66–67 (2005), the Vermont Supreme Court declined to "follow the example of those courts that have created their own sentencing procedures to replace legislative schemes held unconstitutional in the wake of *Apprendi* and *Blakely* [,]" because it was "not at all clear whether the [Vermont l]egislature would prefer an indeterminate sentencing scheme placing greater discretion in trial judges, or a scheme requiring juries to conduct whatever additional fact-finding is needed."

jury fact finding mechanism to comply with the Sixth Amendment." *Id.* That court elaborated that "using a sentencing jury to make factual findings is a unique judicial function" because *"the determination of court procedural matters is a judicial function that arises from the court's inherent judicial powers." Id.* (emphasis added) (internal quotation marks, citations, and brackets omitted).

Hence, *Chauvin* concluded that empaneling a sentencing jury was also a procedural matter because it *"did not change the punishment available for the underlying substantive offense"* but *"merely changed the steps that the court took in arriving at a sentence already authorized by the legislature." Id.* (emphasis added). Thus, that court reiterated that "safeguarding the rights of criminal defendants is a historical and constitutional function of the judicial branch" and, as a result, "providing a jury trial where the statutory scheme is silent on the issue" was necessarily in line with this judicial function. *Id.* at 26–27.

Additionally, the Maine Supreme Court declared that "[a]lthough requiring a jury to determine [an aggravating fact] may be less efficient that the [l]egislature conceived, tradition and judicial efficiency do not trump the Sixth Amendment." *State v. Schofield,* 895 A.2d 927, 935 (Me.2005). Further, in fashioning a proper remedy upon concluding that the defendant was given an enhanced sentence in violation of *Blakely,* the Maine Supreme Court decided that although there was

However, in the instant case the legislature has clearly expressed its intent that extended term sentencing exist even in light of *Apprendi* and *Blakely.* As noted above, allowing a jury to make findings necessary to impose an extended sentence would be consistent with this intent, and would not prevent the legislature from taking any future action. The same is true of *State v. Hughes,* 154 Wash.2d 118, 110 P.3d 192, 209 (2005), *abrogated on other grounds by Washington v. Recuenco,* —— U.S. ——, ——, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006), where the Washington Supreme Court concluded it would "not create a procedure to empanel juries on remand to find aggravating factors because the legislature did not provide such a procedure and, instead, explicitly assigned such findings to the trial court."

"presently no procedure for empaneling a jury to decide sentencing facts," it was "well within [that court's] inherent judicial power to 'safeguard and protect within the borders of this State the fundamental principles of government vouchsafed to us by the State and Federal Constitutions.'" *Id.* at 937 (quoting *Morris v. Goss,* 147 Me. 89, 83 A.2d 556, 565 (1951)). As is also true in the instant case, *Schofield* held that empaneling a jury on resentencing "best preserves the [l]egislature's intent to provide greater punishment for those who commit the most heinous offenses." *Id.*

Finally, in *Aragon v. Wilkinson ex rel. County of Maricopa,* 209 Ariz. 61, 97 P.3d 886, 891 (App.Ct.2004), the Arizona Court of Appeals reiterated that *"Blakely* does not impede the imposition of an aggravated sentence because the court can convene a jury to find facts that may support imposition of an aggravated sentence." In a situation similar to the instant case, that court concluded that "although the statutory sentencing scheme does not currently provide for convening a jury trial during the sentencing phase of a non-capital case, nothing in our rules or statutes prohibits the court from doing so." *Id.* Furthermore, in order to assist the trial court in sentencing on remand, *Aragon* stated that "the court may utilize its inherent authority to convene a jury trial on the existence of facts that may support imposition of an aggravated sentence." *Id.* (citations omitted).

## VIII.

Against this precedent, the majority maintains that it chooses not to exercise that inherent power based on "prudential rules of self government" and in the name of "self-restraint." [4] Majority opinion at 450, 168 P.3d at 580. But as stated before, the majority's position here is diametrically opposed to its position in *Janto, Young,* and *Peralto,* where the majority asserted the appropriateness of remanding cases for determination by a jury of enhanced sentences even though the statutes designated the judge as being charged with that task. Moreover, in opposition to the legislature's express intent to "strengthen[ ] our extended term sentencing scheme against constitutional attack in this evolving area of law[,]" *Penal Code Review* at 27m, the majority's opinion concludes in effect that until there is a legislative amendment, there can *never* be any extended term sentencing.

To reiterate, in such cases, the majority wrongly forbids any extended term sentencing despite the expressed legislative intent to guard against "a clear danger that sentences imposed pursuant to Hawaii's current extended term sentencing scheme will be subject to invalidation by the federal courts." *Penal Code Review* at 27m. The legislature's fundamental concern was to "maintain" "extended term statutes," *id.* at 27n, and to protect them from "constitutional attack," *id.* at 27m. In order, then, to best conform our current extended term sentencing scheme with the expressed intent of the legislature, a jury should be empaneled on remand to decide on the findings necessary under a motion for extended term sentencing, unless Appellant waives his right to jury and such waiver is agreed to by the court.[5]

Accordingly, because the prosecution filed motions for extended terms and this matter was appealed on the ground that the proce-

---

**4.** Instead of adopting an interim solution to address the issue of extended term sentencing, the majority suggests to the legislature the future procedure it envisions by stating that, "[w]ithout deciding the issue, we foresee that, in a reformed extended term sentencing scheme in which the jury is vested with the responsibility of making the requisite findings, notice of the prosecution's intention to seek to seek an extended sentence and the facts requisite to that extended sentence ... would be included in the indictment but withheld from the jury until the second phase of the trial." Majority opinion at 449–50, 168 P.3d at 579–80 n. 19.

**5.** The majority states that subsequent action was taken in the form of House Bill No. 1152, H.B. 1152, 24th Leg., Reg. Sess (2007), by the legislature during its 2007 session in order to address the *Cunningham* mandate and "to assign to the jury the role of making the finding requisite for the imposition of an extended term of imprisonment." Majority opinion at 450, 168 P.3d at 580 n. 20. Plainly, the bifurcated proceeding proposed by the legislature in H.B. 1152 is consistent with the proceeding proposed here on remand. Accordingly the bill supports the disposition recommended in this separate opinion—not the one proposed by the majority.

dure followed in light of *Apprendi* and *Blakely* was incorrect, this case should be remanded for disposition of the extended term motions based on the procedure confirmed in *Blakely* and *Cunningham*. See *State v. Kahapea*, 111 Hawai'i 267, 285, 141 P.3d 440, 455 (2006) (Acoba, J., dissenting, joined by Duffy, J.) (noting that "under the express language of the penal code, consecutive sentences are not meant or intended to displace or replace extended sentences[;] ... [i]t would appear plain, then, that our sentencing law does not sanction the circumvention by a judge of the extended term sentencing procedure by resort to the consecutive term provision" and that "[s]uch subterfuge would violate the provisions of the penal code and potentially raise serious due process considerations").

### IX.

Based on the foregoing, I would vacate the sentences and the judgments thereon and remand for a jury trial on the prosecution's motion for extended terms.